DEHOOG, P. J.
*101 This case requires us to determine when, for purposes of a prescriptive easement claim, a showing of open and notorious use of land gives rise to a presumption of *322 adversity; more specifically, we must decide whether that presumption is unavailable here, even though the claimants did not have permission for their use, and their dispute does not involve a common road constructed by the landowner or of unknown origin. Plaintiff, the Albany & Eastern Railroad Company (AERC), appeals from a judgment in which the trial court relied, in part, on a presumption of adversity in awarding each of the defendants a prescriptive easement to cross plaintiff's railroad tracks to access their homes. Plaintiff contends that the court erred, because the presumption of adversity did not apply and defendants did not prove, by clear and convincing evidence, that their use was actually adverse.[1] Defendants counter that the presumption arose upon their showing of an open, notorious, and uninterrupted use of the crossing for more than 10 continuous years and that, because AERC did not rebut the presumption, the court correctly awarded them each a prescriptive easement to cross AERC's land. We conclude that the court erred in applying a presumption of adversity. We further conclude that no evidence supports the court's finding that defendants' use was actually adverse. Defendants, therefore, did not establish the elements of prescriptive easement, and the court erred in concluding otherwise. Accordingly, we reverse and remand.
We take the relevant facts from the trial court's unchallenged findings and undisputed evidence in the record. Defendants are the owners and residents of eight developed lots in a subdivision known as the Country Lane neighborhood. The Country Lane neighborhood is bounded to the east by the South Santiam River; to the west is a narrow strip of land owned by AERC. AERC maintains and actively uses railroad tracks that run along its property. A road (Country Lane) runs through the subdivision and abuts *102 AERC's strip of land. There is a marked railroad crossing at the juncture of Country Lane and the tracks. Defendants all use the crossing to access their homes from the South Santiam Highway, and they and their predecessors have done so for many years. The Country Lane crossing, which is the subject of the parties' dispute, is defendants' only way to travel between their homes and the South Santiam Highway or any other public roadway.
The history of the parties' interests in their respective properties is relatively straightforward. In 1910, the owner of a large parcel of land deeded it in two parts to his son, Sharinghousen, and his daughter, Murray. Sharinghousen received the southern parcel and later divided it into the eight lots that became the Country Lane neighborhood. In 1928, before Sharinghousen subdivided his parcel, he and Murray each sold a strip of land to the railroad company that was AERC's predecessor in interest. In Murray's deed to the railroad company, she reserved an easement permitting the owner of her property to cross the railroad tracks to access the highway on the other side; Sharinghousen's deed did not reserve an easement and, in fact, warranted that the transferred property was free from all encumbrances.
Sharinghousen divided his parcel into lots in 1942. Since at least that time, the residents of what is now the Country Lane neighborhood have regularly accessed their properties by crossing the railroad tracks at the disputed location. According to two early residents of the subdivision, their access across the tracks has never been restricted; they did not believe themselves to be trespassing, nor did they see any need to obtain permission from the railroad to use the crossing. Defendants also introduced evidence at trial that the deeds to five of the eight lots in the subdivision contained easement language that purported to grant a right of ingress and egress over the railroad's property.
Although the record is silent on the point, the trial court reasoned that AERC's predecessor likely established the crossing to accommodate Murray's easement when it laid its railroad tracks. Since no later than 1953, however, the owners of the railroad property have treated the disputed *103 crossing as public. That is, the crossing has not historically been restricted to the owner of the Murray *323 property or to anyone else. Rather, the railroad owners posted "crossbuck" signs indicating a public crossing and maintained the crossing at their own expense. And, since 1970, the United States Department of Transportation has listed the crossing as public.
AERC acquired the railroad in 2007 and, in 2012, purchased the land on which its tracks ran. Upon conducting an inventory of all crossings, AERC determined that the Country Lane residents did not have deeded access across its tracks. AERC attempted to persuade defendants to enter into an agreement requiring them to buy permits and pay annual maintenance fees, but those negotiations failed. Accordingly, AERC posted signs that indicated that the crossing was private and that prohibited trespassing across the tracks.
Following those developments, AERC filed this action alleging trespass and seeking to quiet title in the disputed crossing. In their answer, defendants raised various affirmative defenses and counterclaims, including a claim that they were entitled to use the crossing by virtue of a prescriptive easement. Following a bench trial, the court found for defendants on that counterclaim. The court reasoned that defendants had demonstrated that their use of the crossing had been open, notorious, and continuous for the required length of time, giving rise to a presumption of adversity that AERC had not rebutted; the court separately stated that defendants had proved the elements of their prescriptive easement claim by clear and convincing evidence. As a result, the court awarded each defendant an easement to cross AERC's railroad tracks. AERC appeals that ruling and asserts that each basis for the trial court's ruling is erroneous.[2]
*104 To give context to the parties' arguments and the court's ruling, we start with a brief summary of the law governing easements and, particularly, prescriptive easements. An easement is a nonpossessory interest in another's land that grants the owner of the easement a right of limited use or enjoyment. Wels v. Hippe , 360 Or. 569, 576, 385 P.3d 1028 (2016), adh'd to as modified on recons , 360 Or. 807, 388 P.3d 1103 (2017). As an interest in land, an easement ordinarily must be created in writing. Id . at 577, 385 P.3d 1028. One exception to that rule, however, is a prescriptive easement. A prescriptive easement is one created by operation of law and arises through the use of another's land over a prolonged period of time. Id. The law does not favor prescriptive easements, because they award the claimant an interest in land for which the landowner is not compensated. Id . at 578, 385 P.3d 1028. As a result, a claimant must establish the elements of a prescriptive easement by clear and convincing evidence. Id.
To establish a prescriptive easement, a claimant " 'must establish an open and notorious use of [the owner's] land adverse to the rights of [the owner] for a continuous and uninterrupted period of ten years.' " Id. at 577, 385 P.3d 1028 (quoting Thompson v. Scott , 270 Or. 542, 546, 528 P.2d 509 (1974) ). Put differently, a claimant must establish that the use of the land was open, notorious, and adverse for 10 continuous and uninterrupted years. In this case, the parties agree that defendants proved that their use was open and notorious for 10 continuous and uninterrupted years. Thus, as at trial, the only issue on appeal is whether defendants' use was adverse .
The Supreme Court recently explained in Wels that a claimant's use of property is "adverse" if it is "inconsistent with the owner's use of the property or if it is undertaken not in subordination to the rights of the owner." Id. at 578, 385 P.3d 1028.[3] As *324 relevant here, the focus of the adversity inquiry is on the extent to which the claimant's use interferes with the *105 owner's use of the property. Id. at 580, 385 P.3d 1028. Furthermore, permissive use is not adverse. Id. at 579, 385 P.3d 1028 ; see also Baum et ux . v. Denn et al ., 187 Or. 401, 406, 211 P.2d 478 (1949) ("A prescriptive easement can never ripen out of mere permissive use no matter how long exercised.").
Under some circumstances, a claimant's use of another's property is presumed to be adverse. That is, even though it is a claimant's burden to prove adversity, sometimes proof that the claimant's use was open and notorious for the prescribed period of time gives rise to a rebuttable presumption of adversity. Wels , 360 Or. at 579, 385 P.3d 1028. When a presumption of adversity arises, it serves to shift the burden from the claimant to the owner, who may rebut the presumption by proving that the use was, in fact, permissive.
The Supreme Court's decision in Wels described circumstances in which a claimant may-and may not-rely on a presumption of adverse use.[4] The court stated that the presumption typically applies in "ordinary cases, in which the person claiming the easement by prescription is a stranger to the landowner." 360 Or. at 579, 385 P.3d 1028. That, the court explained, is because, in such circumstances, "it makes sense to assume that obvious use of the owner's property is adverse to his or her rights." Id . The court cautioned, however, that the presumption does not apply in every such case. In particular, the presumption does not apply "when the nature of the land or the relationship between the parties is such that the use of the owner's property is not likely to put the owner on notice of the adverse nature of the use." Id. The court then highlighted two specific instances in which even a stranger to the landowner could not rely on a presumption of adversity.
First, when an owner of land has given another person permission to travel across the owner's property, the person's use in accordance with that license cannot give rise to a presumption of adversity. Id. Further, the permissive character of any such use is "deemed to continue" unless *106 and until the claimant proves that he or she has repudiated the owner's permission and communicated that fact to the owner. Id. ; see also Thompson , 270 Or. at 548-49, 528 P.2d 509 ("When the use of the servient owner's land is permissive at its inception, the permissive character of the use is deemed to continue thereafter unless the repudiation of the license to use is brought to the knowledge of the servient owner.").
Second, "when a claimant uses a road that the landowner constructed or that is of unknown origin, the claimant's use of the road-no matter how obvious-does not give rise to a presumption that it is adverse to the owner." Id. Rather, it is " 'more reasonable to assume that the use was pursuant to a friendly arrangement between neighbors *** than to assume that the user was making an adverse claim.' " Id. at 579-80, 385 P.3d 1028 (quoting Woods v. Hart , 254 Or. 434, 436, 458 P.2d 945 (1969) ). It is especially reasonable to make that assumption when the claimant's use of the road has been nonexclusive. Id. at 580, 385 P.3d 1028. And, under those circumstances, the claimant may not rely on a presumption of adversity and must, instead, affirmatively establish by clear and convincing evidence that his or her use of the road is actually adverse. Id.[5]
*325 In this case, the trial court determined that the presumption of adversity applied and that, because AERC had not rebutted that presumption with evidence that defendants' use of the crossing had been permissive, defendants had established their claim. The court separately found under a clear and convincing evidence standard that defendants' use had been actually adverse. On appeal, plaintiff argues that the court erroneously applied the presumption *107 of adversity, because the nature of the land and relationships between the parties were such that defendants' specific use of the crossing was not likely to put AERC on notice that defendants were acting under a claim of right. See id . at 579, 385 P.3d 1028. AERC further argues that there is no evidence to support the court's finding of actual adversity. Defendants, in response, defend each ground of the trial court's ruling. For the reasons that follow, we agree with AERC that, under the facts of this case, the presumption of adversity does not apply and the evidence in the record does not support the trial court's finding of actual adversity.
Whether a claimant has established the elements of prescriptive easement-open and notorious use for the requisite period of time-is ordinarily a question of fact. Id . at 578, 385 P.3d 1028.[6] Thus, assuming a trial court has applied the correct legal standards, we will uphold its findings of historical fact if there is any evidence to support them. Id . Here, however, the court's conclusion that a presumption of adversity arose under the undisputed facts raises a legal question. Accordingly, we review that aspect of the court's decision for errors of law.
In concluding that a presumption of adversity applied in this case, the trial court stated:
"Adverse use is a use that is contrary to the interest of the landowner. Under Oregon law a presumption of adversity may arise under certain circumstances. 'The prevailing rule is that where a claimant has shown an open, visible, continuous and unmolested use of land for the period of time sufficient to acquire an easement by adverse use, the use will be presumed to be under a claim of right.' Feldman v. Knapp , 196 Or. 453, 471[, 250 P.2d 92] (1952). The Court finds that the presumption of adversity applies in this case."
*108 Although the trial court did not have the benefit of the recent Wels decision, it is notable that, in that case, the Supreme Court reiterated the same broad principle: "It is often stated that open and notorious use for the prescribed period gives rise to a rebuttable presumption of adverse use." 360 Or. at 579, 385 P.3d 1028. Our reading of Wels , however, leads us to conclude that the presumption is not as broadly applicable as the trial court understood it to be.
As our earlier discussion of Wels suggests, the premise underlying the presumption of adversity is that some uses of land intrinsically convey a claim of right, even if those uses do not interfere with the owner's use of the land. See id . (discussing "ordinary cases," involving strangers to the landowner, in which "it makes sense to assume that the obvious use of the owner's property is adverse to his or her rights"). Although the court discussed circumstances in which the presumption would not apply-where the claimant's use began permissively or involved a road constructed by the landowner or of unknown origin-we understand *326 the court's rationale for those exceptions to be what controls here. That is, in some cases, even those involving strangers to the landowner, "the nature of the land or the relationship between the parties is such that the use of the owner's property is not likely to put the owner on notice of the adverse nature of the use." Id . (emphases added).
Furthermore, we conclude that this is such a case. That is, the nature of the railroad crossing at issue here was such that defendants' use of that crossing was not likely to have put plaintiff on notice that the use was adverse. The trial court's express findings dictate that conclusion. The court found that
"[i]t is clear that from at least 1953 the railroad treated the crossing as a public crossing. The railroad has always maintained the crossing at its own expense. The railroad installed crossbuck signs indicative of a public crossing. There is no evidence that restrictive signs were installed such as 'no trespassing' or 'private crossing, access restricted.' Beginning in 1970 the crossing was erroneously listed as a public crossing by the United States Department of Transportation."
*109 Although those facts may suggest a misunderstanding on the part of AERC and its predecessor that there was an easement on behalf of the public-which, as noted, defendants have not argued-nothing about them would have put the landowners on notice that they needed to take action to protect their interests against defendants . See Wels , 360 Or. at 577, 385 P.3d 1028 ("A critical underpinning of the doctrine thus is that the owner of land against whom a prescriptive easement is being claimed must have reason to know of the adverse use of his or her property before being held responsible for failing diligently to take action to protect it."). We note-as did the trial court-that this case is distinct from the "common road" cases. See id . at 579-80, 385 P.3d 1028 ; Woods , 254 Or. at 436, 458 P.2d 945. There is no indication that the crossing at issue here was built to benefit the railroad and, unlike the traditional common road cases, the defendants here are not incidental users of a roadway that was constructed by the railroad or is of unknown origin. Unlike the trial court, however, we cannot conclude that, because of that distinction, a presumption of adversity applies here; it follows that the trial court erred in applying that presumption.
Without the benefit of a presumption of adversity, the burden remained on defendants to prove by clear and convincing evidence that their use of the railroad crossing had been adverse or otherwise under a claim of right. As noted, the trial court found that defendants' use had been "actually adverse to the interests of" AERC, but the court did not explain its basis for making that finding. For their part, defendants point to evidence in the record that their use of the crossing required AERC to bear the costs of maintaining the crossing and insuring against liability at a combined cost of approximately $ 5,760 a year. But, even though that fact shows that defendants' use of the crossing created a burden for AERC, it is not sufficient to show that defendants' use was adverse for purposes of their prescriptive easement claim. As the court explained in Wels :
"It bears some emphasis that the focus is on the extent to which the claimant's use interfered with the owner's own use of the road , not on the extent to which the claimant's use of the road somehow interfered with the owner's use or enjoyment of the property generally. It is only by interfering *110 with the owner's use of the road that the claimant puts the owner on notice of the adverse character of his or her use."
360 Or. at 580, 385 P.3d 1028 (emphasis in original). Here, there is no evidence that defendants' use of the crossing in any way interfered with AERC's use of its property. See id . at 581, 385 P.3d 1028 (evidence that claimant's use of landowners' road created noise and dust observable from landowners' home was not evidence that claimant's use interfered with landowners' use of the same road); see also Webb v. Clodfelter , 205 Or. App. 20, 29, 132 P.3d 50 (2006) (claimants' use, which caused wear to roads and damage to locks and gates, had not interfered with the owner's own use and therefore failed to establish adversity).
In sum, the fact that defendants' use of the crossing created maintenance and liability costs for plaintiff is not evidence that defendants'
*327 use of the crossing interfered with AERC's use of its property, and no other evidence in the record supports the trial court's finding of adverse use. Without the benefit of a presumption of adversity, and without evidence of actual adversity, defendants' prescriptive easement claim fails. The trial court erred in concluding otherwise.
Reversed and remanded.

AERC also assigns error to the trial court's award of attorney fees to defendants. Because we reverse the underlying judgment, we need not address the award of attorney fees.

Defendants did not allege a prescriptive public easement in their answer. See Petersen v. Crook County , 172 Or. App. 44, 49, 17 P.3d 563 (2001) (to establish a public easement, claimants must prove by clear and convincing evidence the additional element of use by the general public). Furthermore, although they raised various other counterclaims, including implied easement and easement by estoppel, they do not advance any arguments in support of those theories on appeal.

To establish adversity under a "not in subordination to the rights of the owner" theory, the claimant must show that the use "was undertaken under a claim of right of which the owners were aware ." Wels , 360 Or. at 571, 385 P.3d 1028 (emphasis added); id . at 580, 17 P.3d 563 (noting that it is not sufficient "for a claimant merely to believe that he or she has the right to use" the disputed property). Defendants do not contend that they showed a claim of right to use the disputed crossing.

The trial court in this case did not have the benefit of Wels because it was decided several months after the court's ruling.

Older cases suggest that, when the presumption of adversity applies, it may be rebutted with evidence that the claimant's use is of an existing roadway and the use does not interfere with the landowner's own use of the property. See, e.g. , Chambers v. Disney , 65 Or. App. 684, 689-90, 672 P.2d 711 (1983) (even if presumption of adversity existed, it was rebutted where the contested road was of unknown origin and both the plaintiffs and defendants had used the road); Woods , 254 Or. at 437, 458 P.2d 945 ("[T]he fact that the claimant's use is of an existing way and the use does not interfere with the owner's use is, in our opinion, enough to rebut the presumption of adverseness."). More recently, however, in Wels , the Supreme Court clarified that the presumption does not arise in the first instance where "the nature of the land or the relationship between the parties is such that the use of the owner's property is not likely to put the owner on notice of the adverse nature of the use." 360 Or. at 579, 385 P.3d 1028.

Because this is an appeal from an equitable action, we have discretion to review the case de novo . ORS 19.415(3)(b) ; see Wels , 360 Or. at 578, 385 P.3d 1028 (because of the equitable nature of a prescriptive easement claim, de novo appellate review is discretionary). The parties in this case, however, have not asked us to review the case de novo , and we do not exercise our discretion to do so. See ORAP 5.40 (8)(a) ("In those proceedings in which the Court of Appeals has discretion to try the cause anew on the record and the appellant seeks to have the court exercise that discretion , the appellant shall concisely state the reasons why the court should do so." (Emphasis added.)).