Argued and submitted March 9, 2020; on appeal, judgment on plaintiffs' first claim for relief and award of prescriptive easement reversed and remanded, otherwise affirmed; on cross-appeal, second assignment of error dismissed as moot, otherwise affirmed March 10; petition for review denied July 8, 2021
(368 Or 347)

# Bradner L. HISEY
## and Doris Hisey,
## Trustees of the Bradner Hisey and
## Doris Hisey Family Trust,
### *Plaintiffs-Respondents*
### *Cross-Appellants,*

*v.*

## Daniel PATRICK
## and Rain Patrick,
### *Defendants-Appellants*
### *Cross-Respondents.*

## Douglas County Circuit Court
## 15CV25947; A165885

484 P3d 377

Defendants appeal a general judgment granting plaintiffs a prescriptive easement over a 15-by-16-foot section of defendants' residential driveway. Defendants and plaintiffs own the only two residences atop a ridge overlooking the Umpqua River. Plaintiffs successfully asserted in the trial court that, for a continuous period from 1996 through 2015, plaintiffs and their predecessors in interest regularly backed onto defendants' driveway as they maneuvered vehicles out of their garage. On appeal, defendants assert that the court erred in granting a prescriptive easement because plaintiffs' use of the driveway was not adverse to defendants' rights and interests. *Held*: The trial court erred in applying a presumption of adversity, and in awarding plaintiffs a prescriptive easement over defendants' driveway, because plaintiffs did not establish adverse use.

On appeal, judgment on plaintiffs' first claim for relief and award of prescriptive easement reversed and remanded; otherwise affirmed. On cross-appeal, second assignment of error dismissed as moot; otherwise affirmed.

George William Ambrosini, Judge.

Casey M. Nokes argued the cause for appellants-cross-respondents. Also on the briefs was Cable Huston LLP.

Rohn M. Roberts argued the cause for respondents-cross-appellants. Also on the briefs was Arnold Gallagher P.C.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

SHORR, J.

On appeal, judgment on plaintiffs' first claim for relief and award of prescriptive easement reversed and remanded; otherwise affirmed. On cross-appeal, second assignment of error dismissed as moot; otherwise affirmed.

**SHORR, J.**

Defendants appeal a general judgment granting plaintiffs a prescriptive easement over a 15-by-16-foot section of defendants' residential driveway. Defendants and plaintiffs own the only two residences atop a ridge overlooking the Umpqua River. Plaintiffs successfully asserted in the trial court that, for a continuous period from 1996 through 2015, plaintiffs and their predecessors in interest regularly backed onto defendants' driveway as they maneuvered vehicles out of their garage and down the road leaving the ridge. Defendants assert that the court erred in granting a prescriptive easement because plaintiffs failed to prove by clear and convincing evidence that their use of the driveway area was open, notorious, and adverse for a continuous and uninterrupted period of at least 10 years. In particular, defendants argue that plaintiffs' use of the driveway area was not adverse to defendants' rights and interests. We conclude that the court erred in awarding plaintiffs a prescriptive easement over defendants' driveway, because plaintiffs did not establish all the required elements of such an easement.[1] Therefore, we reverse and remand that aspect of the judgment.

In reviewing a trial court's decision to grant a prescriptive easement, we uphold the court's express and implied findings of fact if there is any evidence in the record to support them. *See Wels v. Hippe*, 360 Or 569, 578, 385 P3d 1028 (2016), *modified on recons*, 360 Or 807, 388 P3d 1103 (2017) ("[A]ssuming the trial court applied the correct legal standards, its findings of historical fact will be upheld if there is any evidence to support them.").[2] With that

---

[1] Plaintiffs cross-appeal, claiming that the trial court erred in denying their claim for an implied easement, and in only granting a 15-by-16-foot prescriptive easement rather than the larger easement plaintiffs had sought. We conclude that the court did not err in rejecting plaintiffs' implied easement claim, and we affirm that aspect of the opinion without further written discussion, because we do not believe such discussion would benefit the bench, bar, or public. Additionally, because we conclude that plaintiffs should not have been granted a prescriptive easement, we do not consider plaintiffs' now-moot second assignment of error on cross-appeal objecting to the size of the granted prescriptive easement.

[2] While both parties invite us to review their claims *de novo*, we decline those requests. Discretionary *de novo* review by this court is used sparingly and reserved for "exceptional cases." ORAP 5.40(8)(c). We conclude that this is not such a case.

factual standard of review in mind, we summarize the relevant facts.

In 1990, the Vanderwalkers and the Perrys (predecessors in interest to plaintiffs and defendants, respectively) jointly purchased an undeveloped 40-acre parcel with the intention of dividing it into two parcels and building neighboring homes there. They divided the land by plat in 1992, drawing the boundary lines in such a way as to afford each couple a roughly equal amount of both the overall acreage and the space atop the level ridge area. Both couples intended to build their homes on that ridge. The Vanderwalkers became the owners of the north parcel, and the Perrys became the owners of the south parcel. Around that same time, the Vanderwalkers and the Perrys jointly paid a contractor to grade and level the top of the ridge and create a gravel driveway on the ridgetop running from north to south. Over the next several years, the Vanderwalkers and the Perrys constructed their respective homes atop the ridge on the north side and south side respectively. The Vanderwalkers completed their home last, and all construction was complete by 1996. When the homes were first constructed, the area looked roughly as pictured here in this photo from 2005, with a driveway area covering much of the middle of the ridge:



The Perrys' shop is the smaller structure near the middle of the central driveway area. Both properties' only access off the ridge is via a small dirt road running northeast away from the ridge.[3]

For the entire period that Vanderwalker owned his property, he was misinformed about the precise location of the property line dividing the two parcels and regularly backed his vehicle onto the Perrys' property every time he drove out of his garage to leave the ridge. Although Vanderwalker believed that the property line was within a few feet of the Perrys' shop, the true property line was later revealed to be some 40 feet north of that shop.[4] As a result, Vanderwalker testified that he regularly drove over his neighbor's driveway believing that he was actually on his own property.[5] Vanderwalker's practice of backing up some length before leaving the property was due to the configuration of the ridgetop, which was narrow and bounded by steep drop-offs to both the east and west. Vanderwalker testified that turning a vehicle around on the ridgetop would not have been feasible. In addition to using that area for backing up and exiting the ridge, Vanderwalker also used the area for guest parking, but testified that guests always parked in such a fashion that the Perrys could get in and out of their property. The Vanderwalkers and Perrys had a friendly relationship. Vanderwalker testified that both couples considered the property line across the driveway "non-existent" and that they "frequently went back and forth across" what they perceived to be the property line. Vanderwalker explained that he "didn't feel that [he] had to ask" permission to use the Perry driveway if he so desired.

---

[3] The road off the ridge is contained entirely on the northern parcel, which is subject to an express easement for the southern parcel's benefit. The rights to that road are not at issue on appeal.

[4] The parties appear to disagree on how far the actual property line is from where Vanderwalker mistakenly believed the property line to be. The trial court did not address this issue in its express factual findings. Consistent with our factual standard of review, we reference plaintiffs' testimony on the issue.

[5] The Perrys were deceased when this litigation began, and the record contains little information on whether the Perrys were aware of the Vanderwalkers' misperception regarding the property line or whether the Perrys were aware that the Vanderwalkers were regularly driving over the Perry property to exit the ridge. Vanderwalker testified that he did not remember having any discussion with the Perrys about the boundary line between the properties after 1990.

In 2002, the Vanderwalkers sold their property to plaintiffs, and the misconception regarding the exact location of the property line dividing the parcels continued. Plaintiffs exited the property in the same fashion, by backing out of the garage, all the way back onto the neighboring property, before heading down the hill. In 2003, the Hayes became the new owners of what had been the Perry property, and defendants began residing there as part-time renters in 2005. Defendants purchased the property in 2007 and began living there full-time in 2008.

Plaintiffs and defendants quickly developed a contentious relationship. Plaintiffs continued to back over part of defendants' property, as their predecessors had before them, without knowledge that they were regularly crossing the property line. Defendants testified that, from the beginning of their time residing at the property, they had accurate knowledge of the location of the property line. They claimed that they were unaware that their neighbors had been regularly crossing the property line and contested at trial that such trespass had been occurring. Defendants testified that they never gave plaintiffs permission to use their property and that, had they ever observed plaintiffs on defendants' property, they would have told plaintiffs to leave. Plaintiff Bradner Hisey testified that his use of defendants' driveway would have never interfered with defendants' use, because each incursion onto the neighboring property lasted "only 20 seconds."

In 2009, plaintiffs obtained a survey of the properties, and, for the first time, plaintiffs became aware of the true property line. Hisey testified that, at that time, he provided defendants with a copy of the survey and told defendants that he had been mistaken about the location of the property line. However, plaintiffs continued using the driveway in the same fashion, now with the knowledge that they were driving on defendants' property. That same year, both plaintiffs and defendants completed improvements to the ridge area, including paving and widening their respective shares of the driveway area. While the driveway area had previously been a simple gravel path approximately 10 to 20 feet wide, the improved paved driveway extended over the entire available flat surface of the ridge. On one

occasion around this time, defendant Daniel Patrick witnessed plaintiffs' vehicle parked on defendants' driveway property and Patrick told plaintiffs to move the vehicle. Plaintiffs complied.

In 2015, plaintiffs sent defendants a letter in which they proposed the parties "formalize the[ir] historic use" of the driveway area and exchange reciprocal easement rights to their respective driveway properties, specifically "the small amount of land lying fifty feet on either side of the boundary" between the two parcels. This was the first time that plaintiffs had discussed a potential easement or any claim of right with defendants or defendants' predecessors. Defendants rejected the suggestion and proceeded to fence in their driveway property by adding a gate at the property line dividing the parcels. Plaintiffs testified that, although it was still possible for them to exit the ridge with the gate installed and closed, it had become more difficult. This litigation subsequently ensued when plaintiffs filed a complaint claiming a prescriptive easement and an implied easement over the contested driveway area and requesting declaratory relief. Defendants denied the claims.[6]

The case was tried to the court. After a four-day trial, the trial court found that plaintiffs had established an easement by prescription by showing all the required elements: open and notorious use of the "contested area" that was adverse to defendants' rights for a continuous and uninterrupted period of 10 years beginning in 1996. The court acknowledged the rule established by *Wels*, a Supreme Court case from only two months before the trial: although open and notorious use for the prescribed period generally gives rise to a rebuttable presumption of adverse use, that presumption "does not apply in all cases; in particular, when the nature of the land or the relationship between the parties is such that the use of the owner's property is not likely to put the owner on notice of the adverse nature of the use." 360 Or at 579. However, the court concluded that "the instant case is not a case where the presumption [of adversity] does not apply, as the facts do not indicate a situation

---

[6] Defendants also raised several counterclaims that are not at issue in this appeal.

when the nature of the land or the relationship between the parties is such that the use of the owner's property is not likely to put the owner on notice of the adverse use of the property." Further, the court concluded that the presumption of adversity had not been rebutted by other evidence. The court granted a prescriptive easement for ingress and egress in the driveway area, extending 15 feet south of the true boundary line between the parcels and 16 feet from east to west along the eastern side of the driveway. The court rejected plaintiffs' implied easement claim.[7] Defendants filed this timely appeal and reiterate their arguments that plaintiffs did not present legally sufficient evidence to establish the elements of a prescriptive easement.

We first consider the standard that controls our review of the trial court's decision. Whether a plaintiff has established the various elements of a prescriptive easement is ordinarily a question of fact. *Id*. at 578. "Thus, assuming a trial court has applied the correct legal standards, we will uphold its findings of historical fact if there is any evidence to support them." *Albany & Eastern Railroad Co. v. Martell*, 298 Or App 99, 107, 445 P3d 319 (2019), *rev'd on other grounds*, 366 Or 715, 469 P3d 748, *adh'd to as modified on recons*, 367 Or 139, 475 P3d 437 (2020). However, a court's conclusion that a presumption of adversity should apply to the facts, as found, in a prescriptive easement case raises a legal question, that we review for legal error. *Id*. Accordingly, here, we review the court's decision granting the prescriptive easement, which was based on applying that presumption, for errors of law.

We begin by considering the legal principles that control our analysis. An easement is a nonpossessory interest in another's land that entitles the holder of the easement to use the burdened property for some particular purpose. *Wels*, 360 Or at 576. Although easements ordinarily must be created in writing, there are exceptions to that general rule. *Id*. at 577. One is that easements may be created by prescription, meaning "use over time and the operation of law." *Id*. The equitable doctrine of prescriptive easements

---

[7] The court also resolved other claims and counterclaims not at issue in this appeal.

evolved to resolve conflicts between two competing interests: the interest of property owners in controlling the use of their property and the societal interest in protecting established patterns of land possession and use. *Albany & Eastern Railroad Co. v. Martell*, 366 Or 715, 720, 469 P3d 748, *adh'd to as modified on recons*, 367 Or 139, 475 P3d 437 (2020). However, the doctrine in essence allows a person to obtain a property interest without paying for it, and for that reason prescriptive easements are disfavored. *Id.*

A prescriptive easement arises when a plaintiff demonstrates—by clear and convincing evidence—open, notorious, and adverse use of another's property for a continuous and uninterrupted period of at least 10 years. *Thompson v. Scott*, 270 Or 542, 546-47, 528 P2d 509 (1974). Use by successive owners in privity may be tacked to meet the 10-year period. *McGrath v. Bradley*, 238 Or App 269, 275, 242 P3d 670 (2010). Use is considered "open and notorious" if it "provides the landowner with 'a reasonable opportunity to learn of its existence and nature'" and a fair opportunity to protect against the prescriptive interest. *Wels*, 360 Or at 578 (quoting *Thompson v. Schuh*, 286 Or 201, 211, 593 P2d 1138 (1979)). Use is "adverse" where it is "inconsistent with the owner's use of the property" or "undertaken not in subordination to the rights of the owner." *Wels*, 360 Or at 578. Adverse use cannot be undertaken with the owner's permission. *Id.* at 579. The general rule is that open and notorious use for a continuous and uninterrupted 10-year period gives rise to a rebuttable presumption that the use was adverse to the owner's rights. *Albany & Eastern Railroad Co.*, 366 Or at 721. However, there are circumstances where no presumption is applied and where a claimant must affirmatively show adversity without the aid of a presumption. Whether the presumption of adversity applies in a particular set of circumstances has been the main issue in several recent prescriptive easement cases.

In *Wels*, the Supreme Court articulated that the presumption "applies in ordinary cases, in which the person claiming the easement by prescription is a stranger to the landowner; under such circumstances, it makes sense to assume that obvious use of the owner's property is adverse to his or her rights." 360 Or at 579. That presumption should

not apply, and a claimant should be required to affirmatively show adversity, "when the nature of the land or the relationship between the parties is such that the use of the owner's property is not likely to put the owner on notice of the adverse nature of the use." *Id*. The court gave examples. Permissive use, or use subject to an owner's permission, does not raise the presumption. *Id*. "Similarly, when a claimant uses a road that the landowner constructed or that is of unknown origin, the claimant's use of the road—no matter how obvious—does not give rise to a presumption that it is adverse to the owner," especially when the claimant's use of the road is nonexclusive. *Id*. at 579-80. Under such circumstances, "'it is more reasonable to assume that the use was pursuant to a friendly arrangement between neighbors rather than to assume that the user was making an adverse claim.'" *Id*. (quoting *Woods v. Hart*, 254 Or 434, 436, 458 P2d 945 (1969)). The court clarified that a claimant can still affirmatively show adverse use by demonstrating that the claimant's use of the road interfered with the owner's use of the road, or by showing that the claimant used the road under a claim of right of which the owner was or should have been aware. *Wels*, 360 Or at 580. Recently, under similar facts to *Wels*, we stated that, when a case involves a claimant's use of a preexisting road, the presumption of adversity does not apply and the claimant must affirmatively prove adversity. *Waters v. Klippel Water Inc.*, 304 Or App 251, 255, 464 P3d 490 (2020). In *Waters*, we concluded that the plaintiffs had not met that burden of affirmative proof. *Id*. at 257.

Last year in another case, *Albany & Eastern Railroad Co.*, the Supreme Court concluded that the presumption of adversity did apply where residents of a small community had been regularly using a private railroad crossing to access their neighborhood for some 70 years. 366 Or at 717. The court weighed the following evidence in concluding that the presumption applied: the railroad company and the residents were strangers with no neighborly agreement; there was no evidence that the railroad had ever granted the residents permission to use the crossing; the railroad never attempted to restrict access to the crossing or post no-trespassing signs; and the residents and their predecessors did not believe they needed permission to use the

crossing. *Id*. at 724-25. The court concluded that the railroad's mistaken belief that the crossing was already designated as public did not change the analysis for two reasons: first, that mistake did not begin until the residents had already been using the crossing for more than 10 years; and, second, the railroad could have easily corrected their misunderstanding by referencing their own records. *Id*. at 726-27. As a result, the railroad's mistaken belief that the crossing was public was not one of those circumstances where "'the nature of the land or the relationship between the parties is such that the use of the owner's property is not likely to put the owner on notice of the adverse nature of the use.'" *Id*. at 723, 727 (quoting *Wels*, 360 Or at 579).

The instant case requires us to consider how those recent cases should be applied to one neighbor's use of another neighbor's driveway. In appealing the trial court's decision, defendants argue that the court erred in applying the presumption of adversity. Specifically, defendants argue categorically that the presumption of adverse use does not apply among neighbors. Further, defendants argue that plaintiffs presented no evidence that would have affirmatively proven adversity absent a presumption. Defendants argue that plaintiffs did not meet their burden under *Wels*, because neither defendants nor defendants' predecessors in interest were on actual or constructive notice that plaintiffs were asserting any claim of right, and there was no evidence presented at trial that plaintiffs had interfered with defendants' use of the driveway.

Plaintiffs respond by asserting that the trial court was correct in applying the presumption of adversity. Specifically, they argue that the history of conflict between the parties "clearly established that Plaintiffs' use of the Contested Area was far from 'a friendly arrangement between neighbors,' but rather establishes (or at the very least gives rise to a presumption of) adversity." (Quoting *Wels*, 360 Or at 579-80.) Because defendants did not present any evidence to counter this showing of adversity, plaintiffs assert that the court did not err.

We conclude that the trial court erred, both in applying a presumption of adversity to the facts of this case

and in finding that plaintiffs had presented evidence suffi-
cient to award a prescriptive easement.

Preliminarily, we conclude that the trial court heard
sufficient evidence that plaintiffs had engaged in open and
notorious use of defendants' driveway area for a continuous
and uninterrupted period of at least 10 years, based on the
testimony that plaintiffs and their predecessors in inter-
est had reversed their vehicles over the subject property
on a near-daily basis, from 1996 to 2015. Under our stan-
dard of review, those elements of a prescriptive easement
are met. Thus, we only consider whether plaintiffs' use was
adverse.

First, the period of use from 1996 to 2002, when the
Vanderwalkers and Perrys resided on the properties, does
not support a presumption of adversity. The presumption of
adversity applies where "the person claiming the easement
by prescription is a stranger to the landowner." *Wels*, 360
Or at 579. It does not apply "when the nature of the land or
the relationship between the parties is such that the use of
the owner's property is not likely to put the owner on notice
of the adverse nature of the use." *Id*. Here, Vanderwalker
mistakenly believed that he owned the driveway property in
question, but also testified that the two couples considered
the property line across the driveway "non-existent" and
that they "frequently went back and forth across" what they
perceived to be the property line. Vanderwalker explained
that he "didn't feel that [he] had to ask" permission to access
the Perrys' driveway if he so desired or needed. No presump-
tion of adversity is raised by those circumstances, because
the situation would not have put the Perrys on notice that
an adverse claim of right was developing, even if the Perrys
had had knowledge of the daily intrusions onto their drive-
way property.

We further note, however, that the circumstances
from 1996 to 2002 do not show permissive use. Permissive
use requires some evidence of actual communicated permis-
sion, and there was none in this case. *See Albany & Eastern
Railroad Co.*, 366 Or at 725 (concluding no permissive use
where railroad had never given the claimant-residents
express permission to use railroad crossing, despite signs

designating the area a public crossing and the claimants' mistaken belief that they had a right to use the crossing without obtaining permission); *see also R & C Ranch, LLC v. Kunde*, 177 Or App 304, 311, 33 P3d 1011 (2001), *modified on recons*, 180 Or App 314, 44 P3d 607 (2002) (stating that evidence of mere acquiescence is distinguishable from evidence of permissive use).

Where the presumption of adversity does not apply, a claimant may affirmatively show adversity. *Wels*, 360 Or at 580 (discussing affirmative proof by evidence that the claimant's use interfered with the owner's use, or by evidence that the claimant's use was under a claim of right of which the owner was or should have been aware). Here, however, plaintiffs did not meet that burden as to the period from 1996 to 2002. Plaintiffs presented no evidence that the Vanderwalkers' use interfered with the Perrys' use of their driveway. Even the Vanderwalkers' use of the contested area for guest parking was such that the Perrys could still get in and out of their property. There was also no evidence that the Vanderwalkers had used the Perrys' driveway under a claim of right *of which the owner was or should have been aware*. There was no evidence presented that the Perrys knew that the Vanderwalkers believed they owned the contested driveway area, and no evidence from which the court could have made such an inference. Further, there is no reason to believe that the Perrys should have been aware of the Vanderwalkers' misperceptions. Vanderwalker testified that he never discussed the location of the property line with the Perrys after the couples purchased the property in 1990. And, as we have said, claimants' uncommunicated belief that they have a legal right to defendants' property "is legally insufficient, in the absence of evidence that plaintiffs communicated that belief to defendant[s]." *Waters*, 304 Or App at 257 (internal quotation marks and brackets omitted); *see also Wels*, 360 Or at 581 ("[A]n uncommunicated belief in a right to use property provides no notice to the owner of such a belief. It therefore cannot satisfy the essential requirement of adverse use, that is, that it inform the owner of the servient property that the claimant is asserting a right of use hostile to the rights of that owner."). Vanderwalkers' use under these facts was not adverse.

That turns our attention to the period from 2002, when plaintiffs purchased their property, until 2015, when defendants installed the fence and gate that first obstructed plaintiffs' use of the contested area.

The evidence presented at trial was that, from 2002 onward, plaintiffs' use of the driveway area largely mirrored the Vanderwalkers' use. Like their predecessors before them, plaintiffs backed their vehicles onto the contested area on a near-daily basis as they were leaving the ridgetop. Nothing changed until 2009, when plaintiffs became aware of the true location of the property line. However, this new information did not change plaintiffs' behavior, and the parties did not discuss any claim of right. Defendants testified that they had always known the correct location of the property line, so the survey provided them with no new information. Defendants testified that, at some point around this time, they observed plaintiffs parked in the contested area and directed them to move. But this was apparently an isolated incident and there was no further communication regarding use of the contested area. Finally, in 2015, plaintiffs sent defendants the letter that sparked this litigation in which plaintiffs proposed the parties "formalize the[ir] historic use" of the driveway area via the exchange of reciprocal easements.

Considering those facts, we conclude that the presumption of adversity does not apply to plaintiffs' use of the driveway area during the 2002 to 2015 period. Many of the same characteristics that compelled this conclusion as to the 1996 to 2002 period remain. The use still involves next-door neighbors rather than strangers. The nature of the contested property is still a driveway between two homes. The only real difference from the earlier period is that the neighbors developed an inhospitable relationship at some point. However, that fact is ultimately inconsequential to the wider adversity analysis here. Although it may be less reasonable to presume permissive or subordinate use would occur under such circumstances, the existence of a poor relationship between neighbors is certainly not enough alone to create a presumption of adverse use. Even if defendants had observed plaintiffs' near-daily act of backing up over the contested portion of the driveway, it would not have

put defendants on notice, under these facts, that plaintiffs were claiming a right to that property. *See Wels*, 360 Or at 579 (no presumption "when the nature of the land or the relationship between the parties is such that the use of the owner's property is not likely to put the owner on notice of the adverse nature of the use").

Further, plaintiffs did not present evidence that would have affirmatively established adversity during the 2002 to 2015 period. As with the earlier period, there was no evidence that, when plaintiffs backed their vehicles into the driveway or engaged in any other use of that area, they interfered with defendants' use. There was also no evidence that defendants were or should have been aware that plaintiffs would assert an adverse claim of right. *See Wels*, 360 Or at 580 (affirmative proof of adverse use may be established by evidence that the claimant's use interfered with the owner's use, or by evidence that the claimant's use was under a claim of right of which the owner was or should have been aware). In fact, the only communication the parties had about the contested area during this period cuts against adversity. The incident in which defendants told plaintiffs to move their vehicle from where it was parked in the contested area shows that plaintiffs' use of the area was subordinate to defendants' use.

In conclusion, the trial court erred in applying a presumption of adversity in this case, and in awarding a prescriptive easement, because plaintiffs did not establish all the required elements of such an easement. Therefore, we reverse and remand that aspect of the judgment.

On appeal, judgment on plaintiffs' first claim for relief and award of prescriptive easement reversed and remanded; otherwise affirmed. On cross-appeal, second assignment of error dismissed as moot; otherwise affirmed.