Argued and submitted September 11, reversed November 29, 1974

THOMPSON ET UX, *Respondents, v.*
SCOTT ET UX, *Appellants.*

528 P2d 509

*Robert P. VanNatta* of VanNatta & Petersen, St. Helens, argued the cause and filed a brief for appellants.

*Richard K. Klosterman* of Klosterman & Joachims, Portland, argued the cause and filed a brief for respondents.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL and SLOPER, Justices.

O'CONNELL, C. J.

This is a suit in equity to establish a roadway easement by prescription across defendants' land. Defendants appeal from a decree declaring plaintiffs' right to the asserted easement.

Plaintiffs and defendants own adjoining tracts of land in a rural part of Columbia County. Defendants' property consists principally of a hay meadow and plaintiffs' land is timberland. Plaintiffs harvest the timber from their land on a sustained yield basis.

Neither party lives on the land or in the immediate area. Defendants' meadow provides the most convenient access to a county road for a portion of plaintiffs' timberland. (See map set out in the margin.)

Prior to 1945 the lands in question were owned by M. L. Canaan, who lived on the premises. In 1945 and 1946, Canaan built the road in dispute from the county road past his home,[1] which was near the present boundary between the parties' lands. The road extended 300 to 400 feet into the woods on what is now plaintiffs' timber holdings.

In 1951, Canaan contracted to sell his land to Albert Gregory. In 1955, Gregory entered into a timber cutting agreement with plaintiffs (who then owned no land in the area) under which plaintiffs were entitled to cut timber on parts of the Gregory land and to use all logging roads built by Gregory. The cutting was completed in the winter of 1955-1956. In the summer or fall of 1956, George VanNatta bought Gregory's holdings for his son, Kay VanNatta, then a minor. At the time of the VanNatta purchase, some timber cut during the previous winter was still on the ground. Plaintiffs were allowed to bring a portion of this down timber out over the claimed easement. The evidence established that this use was by express permission of the VanNattas.

In 1959, Kay VanNatta sold to plaintiffs two triangularly-shaped parcels constituting the timbered portion of the Gregory purchase. In 1965, Kay VanNatta sold the remainder of the Gregory purchase (the hay meadow area) to defendants.

---

[1] The house was abandoned sometime in the 1950's, and later burned.

Plaintiff, Frank Thompson, testified that he used the road to remove about 25 loads[2] of pulpwood from his newly purchased land in 1960. Subsequent to that year, Thompson used the road about six times a year to inspect his own land. In testifying, he made no attempt to be more specific as to the frequency of his use of the road. On cross-examination, it was revealed that plaintiff had difficulty in distinguishing those times when he was on his own abutting land from those times when he had actually crossed defendants' land.

Defendants testified that they knew a road had existed across the meadow at one time, but could not tell exactly where it was because of an overgrowth of grass. They further testified that they never saw plaintiffs on their land, but by 1972 suspected that plaintiffs were crossing it.

In 1972, defendants erected a gate with a lock at the entrance from the county road. Plaintiff broke the lock and took a large bulldozer across the meadow to clear fire trails. Defendants then cultivated the entire meadow and plaintiffs brought this suit.

On the basis of the foregoing evidence,[3] the trial court held that an easement was established.

■ In order to establish an easement of way by prescription the plaintiffs must establish an open and notorious use of defendants' land adverse to the rights of defendants for a continuous and uninterrupted period of ten years. Although the proof of these elements is sometimes aided by various presumptions

---

[2] This was only a portion of the total cut. The rest was removed by other available routes.

[3] The evidence of use by others which is not helpful to plaintiffs will be discussed below.

plaintiffs, as claimants of a prescriptive right, must make out their case by clear and convincing evidence, that is, that "the truth of the facts was highly probable."[4]

We turn to an examination of the evidence relating to those elements. The first use of the road by plaintiffs was in 1955, when plaintiffs hauled out logs under a logging contract with Gregory. In 1956, the road was again used by plaintiffs to haul out logs under oral permission from the VanNattas. It is apparent, therefore, that the use during these two years was not adverse. Plaintiffs produced no evidence to establish a regular use of the road from 1956 to 1960.[5] Thus, to make out their case plaintiffs must establish a continuous use for ten years sometime within the period from 1960 to 1972, when defendants interrupted the use by erecting the gate.

■ Thompson's testimony relating to his use during this period was often ambiguous in that it was difficult to determine whether he was describing his activities on his own property, without making it clear whether he reached his own property by traveling over defendants' land or by way of some other means of access. It is possible to read the record as showing that no use of the property was made at all in 1970 due to damage to a culvert across a creek

[4] Cheney v. Mueller, 259 Or 108, 124, 485 P2d 1218 (1971). See also, Dressler v. Isaacs, 217 Or 586, 595, 343 P2d 714 (1959).

The trial judge, in holding that a prescriptive easement was established, said "the evidence preponderates in favor of plaintiffs that they used the road with sufficient regularity," thus indicating that a lesser burden of proof was employed by him.

[5] Mr. Thompson testified that he used the road before 1959 for taking care of his property "up there." He did not indicate the extent of use, however.

between his and defendants' property.⑥ This same kind of ambiguity pervades the entire record, leaving it unclear whether there was a use of any kind, adverse or otherwise, for a continuous period of ten years. We have frequently said that prescription or adverse possession cannot be established by vague and general testimony purporting to describe the claimant's use.⑦

██ Assuming there was evidence of a continuous use for the years from 1960 to 1972, plaintiffs have not established the adversity of their use by clear and convincing evidence.⑧ We have noted above that plaintiffs' early use of the road in 1956 was by permission from the VanNattas. When the use of the servient

⑥ Referring to the damaged culvert, Thompson testified:

"Q. Well, did you cross it?

"A. Well, I'm not sure whether we crossed it or whether we parked in—right at the property line.

"Q. In Scott's field?

"A. We was looking—we was looking at the property lines to the east, so I think we drove on out into my property.

"Q. Wasn't it a fact that the road on out into your property was growing up at that time so you would have about beat your pickup to death if you would have tried to drive back in there?

"A. It was probably at that time that we discovered on our way back that the culvert—canyon was partly—or that one field that's filled back on my property was partly washed out on the plank road that you were talking about."

⑦ See, for example, Dressler v. Isaacs, 217 Or 586, 595, 343 P2d 714 (1959); Muzzy v. Wilson, 259 Or 512, 523, 487 P2d 875 (1971).

⑧ Adverse use is defined as follows by 5 Restatement of Property § 458, p. 2924 (1944):

"A use of land is adverse to the owner of an interest in land which is or may become possessory when it is

"(a) not made in subordination to him, and

"(b) wrongful, or may be made by him wrongful, as to him, and

"(c) open and notorious."

owner's land is permissive at its inception, the permissive character of the use is deemed to continue thereafter unless the repudiation of the license to use is brought to the knowledge of the servient owner. This principle is stated in 5 Restatement of Property § 458, comment *j*, pp. 2933-34 (1944):

> "* * * Thus, a licensee cannot begin an adverse use against his licensor merely by repudiating his license under such circumstances that the licensor has a reasonable opportunity to learn of the repudiation. Justice to the licensor requires more than this. It requires that he know of the repudiation. If knowledge does come to him the source is immaterial. It is not necessary that it come from the licensee, but the responsibility of seeing that it does come to him is on the licensee, a responsibility the obligation of which cannot be satisfied by showing that the licensor neglected to avail himself of means of knowledge."

The trial court found that the permission which was given in 1956, having been limited to removal of down timber, expired by its own terms when the down timber was removed and that the subsequent use for the removal of pulpwood, and for the purpose of inspecting the growing timber and making surveys constituted a repudiation of the license.

When it is contended that a permitted use is changed into an adverse use, "the claimant is required to prove the new and different character of the continued use very clearly."[9] Plaintiffs did not meet this burden in the present case. In the first place, as we have already pointed out, the evidence as to plaintiffs' use is vague and ambiguous. The clearest testimony relates to plaintiffs' activity in removing pulpwood

---

[9] 3 Powell on Real Property ¶ 413, p. 477 (1973).

in 1960. But even here Thompson's testimony was subject to its usual confusion between operations on his own land and the use of the road.[10] And plaintiffs' evidence of defendants' knowledge of the repudiation of the license was meager.[11]

■ It is also to be remembered that to constitute evidence of repudiation of a license the claimant's continued use must be shown to have been of a "new and different character."[12] In the present case the continued use in 1960 was essentially of the same character as the use made with permission, both involving the hauling of logs over the roadway. Admittedly, the original use involved the hauling of down timber and the continued use involved the hauling of currently cut timber, but this difference, without more, would not signal to defendants that plaintiffs had repudiated the license, since the later use was as consistent with the previous permission as it was to a repudiation.

As already noted above in the excerpt from 5 Restatement of Property § 458, comment *j*, p. 2933, justice to the licensor "requires that he know of the repudiation," and the responsibility of seeing that notice comes to the licensor is on the licensee, "a responsibility the obligation of which cannot be satisfied by showing that the licensor neglected to avail himself of means of knowledge." This obligation was not met by plaintiffs in this case. Defendants admitted that they knew plaintiffs were using the road,

---

[10] There was no evidence other than Thompson's testimony to establish that he had used the road.

[11] Defendants' witnesses testified that they saw no sign of the road being used in 1960.

[12] 3 Powell on Real Property ¶ 413, p. 477 (1973).

although defendants never actually saw plaintiffs using it. But the character of plaintiffs' use in terms of being indicative of adversity was such that there would be little or no warning of an adverse claim. The roadbed became less and less distinct after 1955 and was impassable near the boundary by 1970. The portion of the road on Thompson's land near the boundary grew up in alder trees, some of which were at least ten years old by 1973. Scott was particularly emphatic in his testimony that no tracks were left across the field. Plaintiffs avoided the opportunity to present evidence refuting this. With all of the evidence in this state of indefiniteness, it would be impossible to find that plaintiffs met the burden of proving defendants' knowledge of the change in use indicative of a repudiation of the initial permission to use the road.

■ Another fact militating against treating plaintiffs' use as adverse is the non-exclusive character of plaintiffs' use. Plaintiffs themselves introduced evidence establishing that the road was used by others for a variety of purposes, including the hauling of logs, the hauling of hay, the movement of farm equipment, and for hunting. It has been said that

> "* * * If the claimant is only one of two, or several, or many, who make the user in question, it is perhaps inferrable that all of these uses are permissive. In such a case the claimant must affirmatively prove the adverse character of his behavior."[⑨]

The present case calls for the application of this principle. It is true the evidence shows that probably plaintiffs used the road more frequently than those

---

[⑨] 3 Powell on Real Property ¶ 413, p. 483 (1973).

making the other uses, but the general use of a road of this character by the public without permission, would, without further explanation, ordinarily tend to indicate to the servient owner that all of the users, including the more frequent ones such as plantiffs in this case, were simply using the way permissively.

As we have noted repeatedly in this opinion, the evidence adduced by plaintiffs to establish their prescriptive claim was sparse, vague and ambiguous. Something more than this must be required before an owner's property interest is forfeited and transferred to another whose claim rests solely on the use of the owner's property.

Decree reversed.