Argued and submitted January 9, 2020, affirmed on appeal and cross-appeal
March 16, 2022

Dean W. DEVLIN
and Lawnna K. Devlin,
*Plaintiffs-Appellants
Cross-Respondents,*

*v.*

William L. BANKS
and Recycling Depot Incorporated,
*Defendants-Respondents
Cross-Appellants.*

Linn County Circuit Court
15CV30056; A167179

508 P3d 1

This action centers on a dispute about the location of the property line dividing properties owned by plaintiffs and defendants. The trial court granted, in part, defendants' claims for adverse possession and for a prescriptive easement over portions of plaintiffs' property along the boundary between the two properties. The court also dismissed plaintiffs' claim for timber trespass. On appeal, plaintiffs challenge each of the trial court's conclusions. Defendants cross-appeal, primarily arguing that the trial court should have granted their claims in total, rather than in part. *Held*: (1) The parties were not entitled to a reversal based on their claim that the trial court illegally parceled the properties, because any error was invited by the parties. (2) The parties did not provide a legal path to reversing the trial court's conclusions with respect to defendants' claims for adverse possession and a prescriptive easement. (3) The trial court did not err in dismissing plaintiffs' claim for timber trespass at the close of plaintiffs' evidence.

Affirmed on appeal and cross-appeal.

Daniel R. Murphy, Judge.

William H. Sherlock argued the cause for appellants-cross-respondents. Also on the briefs was Hutchinson Cox.

Shallon Halttunen argued the cause for respondents-cross-appellants. Also on the briefs was Weatherford Thompson, P.C.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

ORTEGA, P. J.

Affirmed on appeal and cross-appeal.

**ORTEGA, P. J.**

This action centers on a dispute about the location of the property line dividing properties owned by plaintiffs and defendants. Plaintiffs appeal from a limited judgment entered for defendants which ordered defendants to prepare surveys of the property line based on findings set forth in the trial court's letter opinion. On appeal, plaintiffs assert five assignments of error, challenging some of the court's rulings contained in that letter opinion. Defendants cross-appeal, asserting four assignments of error and challenging additional rulings of the trial court. We conclude that the trial court did not err and, accordingly, affirm.

## I.   BACKGROUND

Defendant Banks is the president of defendant Recycling Depot, Inc. (RDI), which owns one of the parcels at issue and operates a recycling facility on that property. Plaintiffs own and reside on the property that borders defendants' property to the south. Defendants acquired the property in 1993, and plaintiffs acquired their property in 2014. This case centers on a dispute about the exact location of the boundary between the two properties, whether defendants' concrete wall and certain outbuildings cross the boundary into plaintiffs' property, and whether Banks removed trees from plaintiffs' property.

In 2015, plaintiffs filed a complaint against defendants, asserting claims for ejectment, breach of contract, and timber trespass. They alleged that, from 2002 to 2004, defendants and plaintiffs' predecessor-in-interest, Munson, had a dispute about the location of the property line, which they resolved by Munson granting and recording an easement to defendants (the 2004 easement). Plaintiffs further alleged that, after recording the easement, defendants built a concrete wall, well house, concrete slab and outbuilding, and driveway that encroached on Munson's property and was outside the easement area and, as a result, Munson recorded a declaration of encroachment and trespass. After plaintiffs acquired the property in 2014, they alleged that defendants or their agents entered plaintiffs' property and cut down about 25 trees. Plaintiffs sought damages and to

eject RDI from their property, claimed that RDI and Banks breached the 2004 easement, and sought statutory triple or double damages for Banks' removal of the trees.

In response to plaintiffs' complaint, defendants asserted affirmative defenses of adverse possession, invalid contract, termination of easement, a right to cut brush and trees for repair and maintenance of the concrete wall, and that the statute of limitations had run for the ejectment and breach of contract claims. Defendants also asserted counterclaims for quiet title, based on adverse possession, of an approximately 16-foot wide strip of land on plaintiffs' property that runs along the entire border of the two properties and, in the alternative, for a prescriptive easement in the same area "allowing [the] use of the land that [d]efendants have made as part of the operation of a recycling depot." In reply to those counterclaims, plaintiffs denied each allegation pleaded by defendants, but did not assert any affirmative defenses.

Plaintiffs moved for summary judgment on defendants' claim for adverse possession, arguing that defendants waived any claim to the disputed property in the 2004 easement. Defendants cross-moved for summary judgment on their adverse possession claim and also moved for summary judgment on plaintiffs' claims for ejectment and breach of contract as barred by the statutes of limitation or repose. On defendants' adverse possession claim, the court determined that "there remains significant and genuine issues of fact concerning the property in question, its boundaries, its use and the impact if any of the easement" and denied summary judgment. However, the trial court granted defendants' motion for summary judgment on plaintiffs' claims for ejectment and breach of contract and entered a limited judgment dismissing those claims with prejudice. Plaintiffs did not appeal that limited judgment.

The remainder of the case—plaintiffs' claim for timber trespass and defendants' claim for adverse possession and, alternatively, a prescriptive easement—proceeded to a bench trial. At the end of plaintiffs' case, defendants moved for dismissal of plaintiffs' timber trespass claim based on plaintiffs' failure to put on sufficient evidence that Banks

removed the trees that plaintiffs' expert had valued, which the trial court granted.

Ultimately the trial court granted, in part, defendants' claims for adverse possession and for a prescriptive easement, setting forth its findings and conclusions in a letter opinion:

"1.    [Plaintiff] Dean Devlin * * * has lived [at the subject property] since 2014.

"a.    He farms the 12 acres he lives on; his home [sits] on the property; he raised hay and 7 cattle.

"b.    Devlin testified that his cattle grazed on the disputed portion of land (roughly between an old wire fence attached in part to trees and a concrete wall erected by Banks) though there was no evidence as to when they grazed, for how long, or whether or not it was continuous.

"2.    Banks purchased the wrecking yard property in 1993.

"3.    When Banks bought the property he characterized the property fence line as a mess.

"4.    It appears from all of the evidence that there were a series of fences and walls made of wire, metal panels, wooden panels and possibly other materials between the properties over the years. Though the exact location of those various fences and walls is not possible to determine today with accuracy for the most part they followed, more or less, the Donation Land Claim (DLC) line and are [*sic*] now occupied by the concrete wall. There was also an irregular wire fence south of the wall and the DLC line and part of that wire fence remains; it is attached to posts and trees and is not a straight line.

"5.    Several witnesses testified about what the fence line looked like over the years. Gordon Wallace testified that during the 1940s and into the 1970s the fence line ran along the DLC line or just inside that line. He did not specify whether 'inside' meant north of or south of. Over all [*sic*] the testimony by witnesses to the state of the property line and fence line over the period from 1942-2004 was inconsistent, unclear or otherwise not compelling.

"6.    At least one building (pump house) encroached over the DLC line and especially the roof line of that building protruded over the line and drained over the line.

"7.    In 2004 the former owner of [plaintiffs'] property, Munson, came into conflict with [defendant] Banks. Threats of law suits [*sic*] were made and at one point Munson call[ed] the sheriff in.

"8.    In January 2004 the parties signed an easement agreement to resolve this dispute. Paragraph 5 of that agreement was intended to preclude the very litigation now before the court.

"9.    In 2005 Banks was granted a zero-foot set back allowance by Linn County which suggests that the county believed that the wall was built on or very near the property line.

"10.    Banks testified that Munson gave him permission to install the culvert, driveway and wall. This again suggests that the parties believed that the concrete wall [w]as built on or near the property line.

"11.    Banks built a 'drain line' south of the concrete wall site and then erected the concrete wall more or less along the Donation Land Claim line. The evidence did not inform the court of how wide the drain line was. In some testimony it was called a 'drain field'. Eventually the drain line or field was trampled by [plaintiffs'] cattle—leading the court to conclude the line was not buried deeply.

"12.    In 2015 Banks cut brush on the south side of his wall and cut down small trees as well. (Banks denied cutting trees; the court does not find his denial persuasive and it is contradicted by the other evidence.) This act led to the current litigation."

Based on those findings of fact, the court concluded that the legal property line between the properties is the DLC line and that that line "runs, more or less, along the current concrete wall." The court identified the disputed area as the area between the concrete wall and the old wire fence line and stated that both parties conduct some activity in that area, but that "in both cases that use was more or less inconsistent, intermittent and not continuous." The court then concluded that, under ORS 105.620, the adverse possession statute, defendants "[d]id not maintain an actual, open, notorious, exclusive, hostile and continuous possession of the disputed property for ten years or more during any period prior to the filing of this suit except as specifically

found below," and Banks "[d]id not prove that he had an honest belief that the disputed property was his; and in fact had sought and received permission from a previous owner of [plaintiffs'] property to conduct activity on the disputed land and signed an easement to resolve the property dispute in 2004 except as found below."

With respect to the 2004 easement, the court stated that it "was not properly drafted," that the property description "is incomplete and inaccurate," and that "[i]t may not be enforceable though this action was not brought to enforce it." However, the court determined that the easement was "clear and compelling evidence that both parties understood and acknowledged in 2004 that [plaintiffs' predecessor] owned the disputed property and could grant an[] easement over that property" and defendants so agreed. The court concluded that "[t]his defeats any suggestion that [defendants] held any good faith belief that [they] owned or exercised adverse possession over the disputed property."

The court then addressed the area inside of defendants' concrete wall:

> "The legal property line remains the DLC line. [Defendants] ha[ve] exercised control over the land on the south side of that line occupied by the concrete wall to [the] extent that said wall is over the line to the south. This should be easy enough to establish based on the survey markers already set. Likewise, to the extent if any, that any building on [defendants'] property encroaches over the DLC line onto [plaintiffs'] property it has done so for over ten years and otherwise meets the requirements for a prescriptive easement."

The court then summed up its conclusions:

> "Therefore the court finds that the lawful property line between the properties is the DLC line and that [defendants] ha[ve] a prescriptive easement to the extent that any of [the] permanent buildings encroach over that line and ha[ve] established a successful adverse possession claim to the extent that the concrete wall extends over the DLC line to the south.
>
> "No claim for either adverse possession or prescriptive easement has been proven for that portion of the disputed

land between the concrete wall and the partial wire fence to the south of said wall[;] that remains [plaintiffs'] property."

The court also provided a breakdown claim by claim which provided that defendants' adverse possession claim was "allowed only to the extent the concrete wall encroaches over the DLC line" and that the prescriptive easement claim was "allowed only to the extent that any building on [defendants'] property encroaches over the DLC line."

Following issuance of the letter opinion, defendants moved for clarification as to whether defendants' drainage line was or was not included in the area of adverse possession or prescriptive easement. The court issued a letter opinion in response, clarifying that it did not grant adverse possession or prescriptive easement for the drain pipe or drain field "because the evidence was insufficient to support such a finding."

Defendants then moved again for clarification, because the parties could not agree on the meaning of the court's opinion. In that motion, defendants sought clarification on the area to be included in the adversely possessed area, asking, "Did the [c]ourt intend to extend the finding of adverse possession from the [DLC] Line South, to include the property up to and including the property to the South ([plaintiffs']) side of the concrete wall or fence? Or, did the [c]ourt intend to keep the [DLC] Line as the property line and define only the strip of property directly under the concrete wall as the adversely possessed property?" The court responded:

> "The court found that the property line is, more or less, the [DLC] line. To the extent that the concrete wall or any other permanent structure or part of a structure encroaches over the DLC line there is a granting of [an] easement for that encroachment. Another way of saying that is that Banks owns the land the wall sits on by virtue of the adverse possession and Devlin owns all land south of the wall."

The court then entered a limited judgment that, as explained below, is somewhat inconsistent with its earlier determinations. Defendants drafted the limited judgment and plaintiffs agreed that it correctly reduced the court's earlier rulings to judgment. The limited judgment dismissed

plaintiffs' claims, granted defendants' claim for quiet title "only to the extent of the width of the concrete wall; the DLC line remains the property line," granted defendants' claim for prescriptive easement "only to the extent that any existing building on [d]efendants' property encroaches over the DLC line," and directed defendants to obtain a survey to prepare legal descriptions of the footprint of the concrete wall, the DLC line plus any permanent structure of defendants' that encroaches over it, and "the resulting [plaintiffs'] property south of the concrete wall," and of plaintiffs' property "north of the concrete wall." The limited judgment also provided that a general judgment would be entered that includes the legal descriptions. The parties cross-appeal that limited judgment.

## II.   ANALYSIS

### A.   *Claimed Illegal Parceling of Property*

We begin by addressing and rejecting a claim of error that both plaintiffs and defendants raise on appeal and cross-appeal. The parties assert that the limited judgment results in an illegal parceling of land, because it splits plaintiffs' property into property on the south side of the concrete wall and property on the north side of the concrete wall, with defendants owning a new parcel of property that only lies underneath the concrete wall. We reject the parties' assignments of error, because any error that appears in the limited judgment is entirely of the parties' own making and does not provide a basis for us to reverse that limited judgment on appeal.

The trial court clearly set out in its original letter opinion that the property line was the DLC line and that the concrete wall more or less followed the DLC line, but that, to the extent that the concrete wall crossed over that line into plaintiffs' property, defendant adversely possessed that property; the court stated that the adverse possession claim was "allowed only to the extent the concrete wall encroaches over the DLC line," which by any reasonable reading means that the adversely possessed property is between the DLC line and the southern edge of the wall. On defendants' second motion for clarification, the court again explained that

it had found that the concrete wall, more or less, followed the DLC line and that "Banks owns the land the wall sits on by virtue of the adverse possession and Devlin owns all land south of the wall." That is, the court again stated that defendants owned, by adverse possession, the land the concrete wall sits on *and* the land to the north of the wall, because plaintiffs own "land south of the wall." Despite the court's opinion and clarification, defendants prepared, and plaintiffs agreed to, a limited judgment that parceled out the property such that plaintiffs would own land both north and south of the concrete wall. It was only the parties' insistence that the court could, and did, parcel out the properties in that manner that caused the court to enter a limited judgment that purported to create those parcels.

The parties now claim on appeal that the trial court illegally parceled their property—something that the trial court never suggested that it intended to do and did not do until the parties asked it to by presenting the limited judgment for the court to sign. At no time did the parties suggest to the trial court that, by doing what the parties asked it to do, it would create illegal parcels of property. As such, the parties' actions caused the now-alleged error in the limited judgment and, as a result, they are not entitled to the relief they seek on appeal. *See, e.g.*, *State v. Ferguson*, 201 Or App 261, 269, 119 P3d 794 (2005), *rev den*, 340 Or 34 (2006) (The invited error doctrine "provides that, if an appellant 'was actively instrumental in bringing about' the error, then the appellant 'cannot be heard to complain, and the case ought not to be reversed because of it.'" (Quoting *Anderson v. Oregon Railroad Co.*, 45 Or 211, 216-17, 77 P 119 (1904).)); *see also Ferguson*, 201 Or App at 270 ("The point of the doctrine is to ensure that parties do not 'blame the court' for their intentional or strategic trial choices that later prove unwise and then, to the trial court's surprise, use the error that they invited to obtain a new trial."). Any relief from illegal parceling of their properties that both parties invited the trial court to make must be sought from the trial court in the first instance, because the claimed error does not provide a basis for us to reverse on appeal. We thus reject plaintiffs' fourth assignment of error on appeal and defendants' second assignment of error on cross-appeal.

B.  *Effect of the 2004 Easement on Defendants' Claims*

We next turn to plaintiffs' first assignment of error, in which they argue that the trial court erred in granting a prescriptive easement and adverse possession over a portion of plaintiffs' property in light of paragraph 5 of the 2004 easement between defendants and Munson, plaintiffs' predecessor in interest. That paragraph of the 2004 easement provides:

> "Each party hereto expressly warrants to the other that the party is the sole and exclusive owner of the entire parcels described as the Munson property and/or the Banks property and that neither shall make a claim of ownership to either property. The provisions of this sub-paragraph shall be binding on the heirs, successors and assigns of the respective parties hereto regardless of termination of this easement."

Specifically, plaintiffs argue that the trial court erred by finding that plaintiffs did not seek to enforce the 2004 easement and by failing to make findings that addressed whether paragraph 5 foreclosed defendants' claims for prescriptive easement and adverse possession.

We reject plaintiffs' assignment of error. They do not articulate any legal theory on which it is based and do not cite any legal authority to support their argument in the opening brief. We can conceive of only two ways—neither pled by plaintiffs—in which the 2004 easement could foreclose defendants' claims in the manner plaintiffs now assert: through enforcement of the 2004 easement against defendants through specific performance or through the affirmative defenses of waiver or estoppel. Plaintiff did bring a claim for breach of the 2004 easement against defendants, but sought damages and termination of the agreement, not specific performance. In any event, the trial court dismissed plaintiffs' breach of contract claim with prejudice by a limited judgment which plaintiffs did not appeal. Additionally, waiver and estoppel are affirmative defenses, ORCP 19 B, but plaintiffs did not plead any affirmative defenses to defendants' claims. Plaintiffs have not pointed us to anywhere in the record establishing that the parties tried either defense by consent. *See* ORCP 23 B ("When issues not raised by the

pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). And, finally, even if the defense had been tried by consent, plaintiffs have not provided us with any argument on appeal based on the legal requirements for waiver or estoppel.

In short, plaintiffs have not explained any legal path on appeal that could provide a basis for us to grant the relief that plaintiffs seek in their first assignment of error. We therefore reject it.

C.   *Adverse Possession*

We next address and reject plaintiffs' third assignment of error and defendants' first assignment of error, both of which relate to the court's conclusions on defendants' adverse possession claim. Plaintiffs argue that the trial court erred in quieting title, through statutory adverse possession, to any property south of the DLC line. Defendants argue that the trial court erred in not granting its claim for either common-law or statutory adverse possession all the way to the old wire fence.[1]

For their statutory adverse possession claim, under ORS 105.620, defendants had to show, by clear and convincing evidence, that their possession of the disputed property was "'actual, open, notorious, exclusive, hostile and continuous' for a period of 10 years, that [defendants] had an 'honest belief' that [they] w[ere] the actual owner[s] of the property through the vesting period, and that that belief was objective and reasonable under the circumstances." *Hammond v. Hammond*, 296 Or App 321, 328, 438 P3d 408 (2019) (quoting ORS 105.620). Common-law adverse possession applies if the claim vested before January 1, 1990. *Case v. Burton*, 250 Or App 14, 23, 279 P3d 259 (2012) (citing Or Laws 1991, ch 109, § 3). The elements of common-law adverse possession

---

[1] Defendants also argue that the court erred in not, at a minimum, granting their claim of adverse possession up to and including the concrete wall. As explained elsewhere, the trial court did grant defendants' claim of adverse possession up to and including the concrete wall. To the extent the limited judgment does not reflect that ruling, which was in the court's letter opinion, it was error explicitly invited by the parties and needs to be addressed with the trial court in the first instance.

are the same, except that the "honest belief" element is not required. *Id.* at 22-23.

Because defendants' adverse possession claim is in equity, we have discretion to review the trial court's findings of fact *de novo*, ORS 19.415(3)(b), as defendants ask us to do. However, this is not an exceptional case warranting such review. ORAP 5.40(8)(c). As a result, "we accept the trial court's findings of fact that are supported by the evidence and review for legal error whether those facts establish the elements of [defendants'] claims." *Hammond*, 296 Or App at 324.

As explained above, the trial court found that the concrete wall, more or less, followed the legal boundary of the properties (the DLC line), and quieted title to defendants to the extent the concrete wall veered south of that line, ruling that "[defendants] ha[ve] exercised control over the land on the south side of that line occupied by the concrete wall to the extent that said wall is over the line to the south."

On appeal, plaintiffs argue that the trial court legally erred, because that conclusion is contradicted by the court's other findings with respect to defendants' adverse possession claim, particularly its finding that Banks did not hold a good faith belief that "he owned or exercised adverse possession over the disputed property." Plaintiffs also argue that the trial court erred because it did not address all the adverse possession elements with respect to the portion of property to which the court quieted title in defendants and did not specify the 10-year period of adverse possession. On cross-appeal, defendants argue that the evidence established both their statutory and common-law adverse possession claim all the way to the old wire fence.

First, we reject plaintiffs' assertions that the trial court made inconsistent or irreconcilable findings. Plaintiffs' argument ignores the trial court's findings that the "disputed property" was the property *between* the concrete wall and the old wire fence further south. That is, the disputed property, as defined by the trial court, did not include any property north of the concrete wall. Thus, the court's findings and conclusions that defendants had not established the elements of adverse possession to the disputed property, including the

good faith element, did not apply to property about which the court concluded defendants had proved their claim—the property between the DLC line and the concrete wall. The court also expressly excepted the adversely possessed property from its conclusions that defendants had not proved their adverse possession claim for the disputed property.

Second, we reject plaintiffs' assertion that the trial court was required to walk through each adverse possession element with respect to the property which the court concluded defendants had adversely possessed. Plaintiffs do not point to any law that required the court to do that, and, on appeal, we presume that the court resolved factual disputes in a manner consistent with its ultimate conclusions. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) ("If findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion * * * made by the trial court[.]"). With respect to that property, the court found that "[defendants] ha[ve] exercised control over the land on the south side of that [DLC] line occupied by the concrete wall to that extent the said wall is over the line to the south." It is undisputed that defendants completed the concrete wall by early 2005, 10 years before this lawsuit, and the court found that the wall, more or less, followed the legal property boundary. From those explicit findings, we can presume that the court resolved the factual disputes in this case in a manner sufficient to conclude that defendants proved by clear and convincing evidence a statutory claim for adverse possession of any property between the DLC line and the southern edge of that concrete wall, including that defendants had a good faith belief that they owned that property.[2] Plaintiffs do not explain how the court *legally* erred with respect to any of

___

[2] We reject plaintiffs' argument that the 2004 easement necessarily defeats defendants' honest belief about the concrete wall being located on their property. The 2004 easement between defendants and Munson granted to defendants an easement in a strip along the property boundary for the limited purposes of maintenance of a fence and uses associated with defendants' business conducted on their property; that is, it was not for the purpose of locating the concrete wall. There was evidence that defendants could have both signed the easement and held an honest belief that the concrete wall enclosed their property. That was a question of fact for the trial court, which the trial court implicitly resolved in defendants' favor.

the adverse possession elements based on the facts as found by the court; instead, plaintiffs argue about the historical facts, pointing to the perceived inconsistencies in the court's letter opinion. Thus, we reject plaintiffs' third assignment of error.

Finally, we reject defendants' first assignment of error on cross-appeal. In making their argument, defendants recite the evidence they put on during the trial, but do not engage with the factual findings made by the trial court or explain how the trial court legally erred in concluding that they had not shown by clear and convincing evidence that they met any of the elements for adverse possession with respect to the disputed property. Because we decline to take *de novo* review, we are bound by the trial court's findings if they are supported by the evidence. Here, we conclude that the relevant factual findings of the trial court are supported by the evidence and that those findings support the court's legal conclusions that defendants did not prove their case for statutory or common-law adverse possession to the disputed property between the concrete wall and the wire fence. *See, e.g.*, *Thompson v. Scott*, 270 Or 542, 548, 528 P2d 509 (1974) ("We have frequently said that prescription or adverse possession cannot be established by vague and general testimony purporting to describe the claimant's use."). Thus, we reject defendants' first assignment of error on cross-appeal.

D.  *Prescriptive Easement*

We next address and reject plaintiffs' fifth assignment of error on appeal and defendants' third assignment of error on cross-appeal, both of which relate to the court's conclusions on defendants' prescriptive easement claim. Plaintiffs argue that the trial court erred in granting a prescriptive easement to defendants for the portions of their buildings that cross south of the DLC line. Defendants argue that the trial court erred in not granting their claim for prescriptive easement all the way to the old wire fence.[3]

---

[3] As they did in their adverse possession arguments, defendants also argue that the court erred in not, at a minimum, granting them a prescriptive easement over the property up to the concrete wall. As explained elsewhere, up to the point when defendants incorrectly drafted the limited judgment, the trial court had granted defendants' claim of adverse possession up to and including the concrete wall. Thus, we do not address that part of defendants' argument.

"An easement is a nonpossessory interest in another's land that entitles the holder of the easement to use the burdened property for some particular purpose." *Hisey v. Patrick*, 309 Or App 625, 632, 484 P3d 377, *rev den*, 368 Or 347 (2021). "A prescriptive easement arises when a [party] demonstrates—by clear and convincing evidence—open, notorious, and adverse use of another's property for a continuous and uninterrupted period of at least 10 years." *Id.* at 633 (citing *Thompson*, 270 Or at 546-47). Prescriptive easements are not favored in the law. *Id.* "In reviewing a trial court's decision to grant a prescriptive easement, we uphold the court's express and implied findings of fact if there is any evidence in the record to support them." *Id.* at 627. Whether a party has met the elements of a prescriptive easement "is ordinarily a question of fact." *Id.* at 632. "Thus, assuming a trial court has applied the correct legal standards, we will uphold its findings of historical fact if there is any evidence to support them." *Id.* (internal quotation marks omitted).

Here, the trial court found that "[a]t least one building (pump house) encroached over the DLC line and especially the roof line of that building protruded over the line and drained over the line." The court concluded that "to the extent if any, that any building on [defendants'] property encroaches over the DLC line onto [plaintiffs'] property it has done so for over ten years and otherwise meets the requirement for a prescriptive easement." On defendants' motion for clarification with respect to defendants' drainage line, the court clarified that "the court granted a prescriptive easement for structures (buildings) that currently encroach over the wall and/or the [DLC] line but did not grant a prescriptive easement concerning the drain pipe or the drain field because the evidence was insufficient to support such a finding."

On appeal, plaintiffs argue that the court legally erred, because an easement is a nonpossessory interest, and, as such, the trial court could not grant a prescriptive easement to defendants for the footprint of any of defendants' structures. Plaintiffs also assert, as they did with defendants' adverse possession claim, that the trial court's findings with respect to the "disputed property" contradict

the court's grant of a prescriptive easement for defendants' structures.

We reject plaintiffs' second argument for the same reasons we rejected it with respect to defendants' adverse possession claim—the trial court's findings with respect to the disputed property expressly excepted those areas north of the concrete wall, as not part of the disputed property, and those areas where defendants' buildings encroached south of the DLC line. Those findings are not inherently inconsistent.

We also reject plaintiffs' first argument. Although the nature of an easement is a nonpossessory interest, in that the owner of the property retains an interest in the land, whether a permanent structure may be placed within an easement is determined by the scope of the easement given, and not by its inherent nonpossessory nature. *See Tooker v. Feinstein*, 131 Or App 684, 687, 886 P2d 1051 (1994), *adh'd to as modified on recons*, 133 Or App 107, 889 P2d 1356, *rev den*, 321 Or 94 (1995) ("An easement owner is limited to those uses of the easement that are reasonably necessary for the easement's intended purpose."); *id.* at 688 (defendants could place and maintain a retaining wall in an access easement over property owner's objection, because it was "the only reasonable way to provide lateral support for a driveway"). That is, there is nothing about the nature of a prescriptive easement that necessarily prevents a claimant from proving a prescriptive easement based on the placement of a structure. *Cf. Zerr v. Heceta Lodge No. 111*, 269 Or 174, 187, 523 P2d 1018 (1974) (where it would be inequitable to require removal of a building encroachment in action for ejectment, "'defendant, on payment of damages, acquires either a fee or an easement in the land on which the structure encroaches, but, if the plaintiff wishes, the interest should be limited to an easement so that the plaintiff can recover the land should the encroachments be removed'" (quoting Dobbs on Remedies 356 § 5.6 (1973)). Plaintiffs do not provide us with law to the contrary. Thus, we reject plaintiffs' fifth assignment of error.[4]

---

[4] We note that it appears that the trial court did not grant defendants a prescriptive easement for building footprints, as a factual matter, although it is

Next, we reject defendants' third assignment of error on cross-appeal. Like their argument with respect to adverse possession, defendants recite the evidence they put on during the trial, but do not engage with the factual findings made by the trial court or explain how the trial court legally erred. Because we decline to take *de novo* review, we are bound by the trial court's findings if they are supported by the evidence. Here, we conclude that there is evidence to support the relevant factual findings of the trial court and those findings support the court's legal conclusions. To the extent defendants' argument focuses on their longstanding use of their driveway, which may cross over the DLC line onto plaintiffs' property, we note that defendants did not seek a prescriptive easement for use of their driveway; they sought a prescriptive easement for a 16-foot wide strip of land across their entire boundary with plaintiffs. The trial court did not err in rejecting that claim. Thus, we reject defendants' third assignment of error on cross-appeal.

E.  *Timber Trespass*

Finally, we address the parties' assignments of error related to plaintiffs' timber trespass claim. Plaintiffs argue in their second assignment of error that the trial court erred in dismissing their claim for timber trespass at the close of plaintiffs' case. Defendants raise a fourth assignment of error on cross-appeal, arguing that, if we conclude that the trial court erred as asserted by plaintiffs, we should nonetheless affirm, because the trial court erred in allowing the valuation of the timber submitted by plaintiffs through their expert arborist, Wiggins. We conclude that the trial court did not err in dismissing plaintiffs' claim and, thus, we do not address defendants' conditional assignment of error on cross-appeal.

---

not clear. As explained, the trial court granted defendants' claim for adverse possession to the concrete wall. The evidence in the record is that defendants' buildings sit to the north of the concrete wall. However, as found by the trial court, the roof line of at least one of defendants' buildings extends over the concrete wall and drains onto plaintiffs' property. As such, it appears that the trial court only granted a prescriptive easement to defendants for those encroachments of defendants' buildings that extend past the area of adverse possession—that is, past the south edge of the concrete wall, such as the roof line of at least one building.

Because the case was tried to the court, defendants' motion to dismiss is a motion under ORCP 54 B(2).[5] Under that rule, the trial court can grant a motion to dismiss "on *either* of two grounds: (1) The plaintiff has failed to present a *prima facie* case (the 'directed verdict' standard); *or* (2) even if the plaintiff has presented a *prima facie* case, the court, as trier of fact, is unpersuaded by the plaintiff's evidence." *Venture Properties, Inc. v. Parker*, 223 Or App 321, 336, 195 P3d 470 (2008) (emphases in original). Here, the trial court purported to apply the directed verdict standard when it dismissed plaintiffs' claim with prejudice. "The determination of whether the essential elements of a claim have been established—in other words, whether a *prima facie* case was made—is a question of law." *Clark and Clark*, 171 Or App 205, 210, 14 P3d 667 (2000). However, we are bound by findings the court made, if there is any evidence to support them. *Case*, 250 Or App at 17.

Here, the evidence presented by plaintiffs was that, in September 2015, Devlin discovered cut brush and small trees south of the concrete wall, which he hauled out into his hay field. He then took pictures of the cut brush and trees. Devlin testified that what he hauled into his field was not stacked between the concrete wall and wire fence, but was south of the wire fence. He admitted that all of the cut vegetation was growing next to the concrete wall under the crown of the tall oak trees. Plaintiffs' valuation expert, Wiggins, testified that what was in Devlin's pictures were smaller trees or parts of trees, which had no commercial value. For his valuation, which was completed in February 2017, Wiggins had located stumps and sprouts that he identified as ash and willow, as the cut brush and debris had been removed by that time. Wiggins found 10 stump cuts

---

[5] ORCP 54 B(2) provides:

"After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a judgment of dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment of dismissal against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment of dismissal with prejudice against the plaintiff, the court shall make findings as provided in Rule 62."

that were large enough to value.[6] Plaintiffs did not present evidence of how Wiggins selected those stumps, where along the concrete fence those stumps were located, or any evidence that otherwise connected the stumps that Wiggins found to the trees plaintiffs claimed were cut in September 2015.

Plaintiffs also called Banks to testify. Banks testified that he had gone onto the property south of the concrete wall, which he claimed was his property, to cut brush and tree branches—including poison oak and filbert tree branches—that were growing through and over the concrete wall, blocking his driveway. Banks denied cutting any trees. Upon being shown a picture taken by Devlin, Banks admitted to having cut some of the brush in the picture but denied cutting any of the trees. He also testified that he and a friend had piled what he cut between the concrete fence and the old wire fence. Banks admitted to using a small chainsaw to do the brush cutting.

At the close of plaintiffs' case, defendants moved for dismissal of plaintiffs' timber trespass claim, arguing that "there is inadequate proof that what [defendants] cut is what the arborist valued," because the testimony was, at best, that defendants cut some brush and what the arborist was valuing were trees that were at least two inches in diameter. The court granted defendants' motion, concluding that there was not "sufficient evidence by a preponderance, more likely than not, that [defendants] cut the trees, and particularly in light of the fact that the only evidence—the only evidence as to who cut the trees is [Banks'] adamant denial on the stand under oath that he cut them." However, in its letter opinion, the court made the finding that, "[i]n 2015 Banks cut brush on the south side of his wall and cut down small trees as well. (Banks denied cutting trees; the

---

[6] Wiggins used two methods together to provide a value for the trees, which he identified as six willow trees, ranging in size from two to four and one-half inches in diameter, and four ash trees, ranging in size from four to six inches in diameter. Wiggins used the "trunk formula method" to place a valuation on the 10 trees, for a total lost value of $52. He then also added replacement value, which included the cost to replace and plant the trees, the cost to protect the new trees from livestock, and a yearly check on the trees for three years, for a total damage value of $1,698.66. He did not assign any value to cut brush, branches, or anything smaller than two inches in diameter.

court does not find his denial persuasive and it is contradicted by the other evidence.)," while also reciting that the court had dismissed the timber trespass claim "for failure to prove by a preponderance of evidence that defendants cut down trees."

On appeal, plaintiffs argue that they did present a *prima facie* claim for timber trespass under ORS 105.810. Plaintiffs assert that their position is supported by the trial court's finding that defendants did cut trees and brush on their property and that Banks was not credible. Defendants respond that plaintiffs did not present a *prima facie* case for timber trespass, because plaintiffs did not present any evidence that Banks had cut the trees that Wiggins had valued.

We agree with defendants. The motion that defendants made, and that the trial court granted, was based on plaintiffs' failure to put on any evidence that what Banks cut was what Wiggins had valued. Although there is some evidence to support the trial court's finding in its letter opinion that Banks cut down brush *and* small trees, based on the trial court's ultimate credibility finding at the end of trial, the court did not find that what Banks cut down were the 10 trees valued by Wiggins, and it would have been mere speculation for the court to so find. Plaintiffs did not put on any evidence of the location of the stumps valued by Wiggins connecting those stumps to the trees plaintiffs had dragged into the field that Devlin testified were located south of the wire fence, or connecting those stumps to what Banks admitted to cutting and stacking between the concrete wall and wire fence. Damages is an element of timber trespass, and without any evidence connecting the claimed damage to the trespass committed by Banks, plaintiffs failed to make out a *prima facie* case. *Cf. Harshbarger v. Klamath County*, 294 Or App 631, 637, 432 P3d 363 (2018), *rev den*, 364 Or 535 (2019) (reversing trial court's denial of defendant's directed verdict motion, because plaintiff's only evidence of damage was based on an improper valuation). Thus, we affirm the trial court's dismissal of plaintiffs' timber trespass claim.

Affirmed on appeal and cross-appeal.