594 May 21, 2025 No. 445

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Mitch LANGJAHR
and Elaine Langjahr, husband and wife,
*Plaintiffs-Respondents,*

*v.*

GLORIETTA BAY, LLC,
an Oregon limited liability company,
*Defendant-Appellant.*

Linn County Circuit Court
21CV37379; A179986

Thomas McHill, Judge.

Argued and submitted December 20, 2023.

Sasha A. Petrova argued the cause for appellant. Also on the briefs were Paul Conable and Tonkon Torp, LLP.

Andrew S. Noonan argued the cause for respondent. Also on the brief was Andrew S. Noonan, P.C.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Reversed and remanded.

**ORTEGA, P. J.**

Defendant, Glorietta Bay, LLC, appeals from a judgment granting plaintiffs a prescriptive easement over a corner of defendant's property. The court granted the easement on the parties' cross-motions for summary judgment based on its conclusion that a rebuttable presumption of adversity of use by plaintiffs applied to the case. Defendant appeals, assigning error to the court's grant of plaintiffs' motion for summary judgment. Defendant has not assigned error to the denial of its cross-motion for summary judgment, so we do not address that motion. As to plaintiffs' motion, we conclude that the trial court erred in granting summary judgment, because the rebuttable presumption of adversity did not apply to the undisputed facts of this case and plaintiffs did not otherwise present evidence of adversity. Accordingly, we reverse and remand.

"We review an order granting summary judgment for errors of law and will affirm if we determine that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." *Buchwalter-Drumm v. Dept. of Human Services*, 288 Or App 64, 66, 404 P3d 959 (2017); *see also* ORCP 47 C. In determining whether summary judgment is appropriate, "we view the evidence in the light most favorable to the nonmoving party—here, [defendant]—and draw all reasonable inferences in that party's favor." *WSB Investments, LLC v. Pronghorn Devel., Co., LLC*, 269 Or App 342, 354, 344 P3d 548 (2015); *see also* ORCP 47 C (providing standards for summary judgment). "Where, as here, the parties filed simultaneous cross-motions for summary judgment on the same claim, the summary-judgment record 'consists of documents submitted in support of and in opposition to both motions.'" *WSB Investments*, 269 Or App at 355 (quoting *Citibank South Dakota v. Santoro*, 210 Or App 344, 347, 150 P3d 429 (2006), *rev den*, 342 Or 473 (2007)). With those standards in mind, we recite the following facts from the summary judgment record in this case. Except where noted, those facts are undisputed.

Defendant owns a small, triangular lot (Tax Lot 7200) that borders Water Avenue NE in Albany, Oregon. Purchased

in 2003 from Burlington Northern, defendant's property consists of an abandoned rail line and is unimproved, graveled, and not enclosed. The photos in the record also reveal that there are no curbs, ditches, or sidewalks along Water Avenue NE that separates the property from the road.



Plaintiffs own an adjoining lot to the south and east (Tax Lot 7300), which does not have direct access from Water Avenue NE. Tax Lot 7300 is fenced and comprised of a warehouse and yard. Delivery trucks access Tax Lot 7300 from Water Avenue NE by driving through defendant's graveled property near the eastern narrow end of the property for about 12 feet (the access path) and then through an access gate in plaintiffs' fence. Plaintiffs use Tax Lot 7300 to receive deliveries and to store inventory in the warehouse in connection with their business that is located on Tax Lot 7400, which adjoins Water Avenue NE and Tax Lot 7300's eastern side. Plaintiff Mitch Langjahr knew the access for Tax Lot 7300 was through another lot, but he had no concerns because he believed the lot was an abandoned railroad crossing. He never saw any barricades or no trespassing signs on defendant's lot.

Both Tax Lot 7300 and Tax Lot 7400 were previously owned by the Ahlers, who purchased those properties in 1997. The Ahlers leased the warehouse on Tax Lot 7300 to tenants who drove through Tax Lot 7200 on the access path to get to the warehouse and yard. The Ahlers believed, and

represented to plaintiffs, that the access path was across an abandoned railroad easement.

In 2021, the city told plaintiffs that it was planning on improving Water Avenue NE and that it needed documentation that plaintiffs had an agreement with defendant permitting plaintiffs' access across defendant's property. The city also talked to defendant about providing that access. Defendant's sole member, Lepman, testified that he did not speak to any prior or current owners or tenants of Tax Lot 7300 and did not know that plaintiffs were using defendant's property as the access to Tax Lot 7300 prior to the contact from the city. However, Lepman drives by the property daily and was aware the public was using the property for access. Lepman admitted that, if you looked at the property and the gate, the access path was "an obvious use." However, he "wasn't concerned about [plaintiffs] accessing the property or anyone else," he "didn't give it any thought of [plaintiffs] using the property or anyone else," and "I don't have any problem with them using the property as long as I don't have any immediate need for the property." The evidence was disputed as to whether plaintiffs' use of the access path was exclusive. Lepman testified that "[t]he public was using it[; i]t was all graveled and I don't mind anyone using it." Plaintiff Mitch Langjahr attested that the access path "is not available for anyone to use. It is specific to the uses to which my warehouse receiving yard are employed and to the truck traffic that services that loading yard and warehouse." Defendant has current plans to develop Tax Lot 7200 into a duplex with a "work/live shop or office," and an access easement would compromise those plans.

After negotiations failed, plaintiffs sued for a prescriptive easement and defendant counterclaimed to quiet title. The parties brought cross-motions for summary judgment on their claims. The parties argued, and the trial court concluded, that plaintiffs' claim for a prescriptive easement turned on whether the rebuttable presumption of adverse use applied. The trial court concluded that the presumption did apply, granted plaintiffs' motion for summary judgment, and denied defendant's cross-motion. The court concluded that "[t]he use of this property, by the nature of the property

and the adverse use, is likely to put the owner on notice of the adverse nature of the property's use by plaintiffs and their predecessors in title and use." The court concluded that defendant "acted as the classic 'careless owner' with reason to know that there was and did continue the use of his property as access to the warehouse on Tax Lot 7300." The court entered a general judgment, granting plaintiffs' requested prescriptive easement over defendant's property. Defendant now appeals from that judgment, arguing that the trial court incorrectly applied a presumption of adversity to grant plaintiffs the prescriptive easement.

We start with some principles that govern prescriptive easements. "An easement is an interest in another's land, which grants its owner a right of limited use or enjoyment." *Wels v. Hippe*, 360 Or 569, 576, 385 P3d 1028 (2016), *adh'd to on recons*, 360 Or 807, 388 P3d 1103 (2017). An easement may be created by prescription; "that is, easements may be created through use over time and the operation of law." *Id*. at 577. However, "prescriptive easements are not favored by the law" because "the doctrine permits one person to acquire an interest in land without paying the owner for it." *Id.* at 578 (citing *Wood v. Woodcock*, 276 Or 49, 56, 554 P2d 151 (1976)). The rationale behind allowing prescriptive easements is that "'established patterns of land possession and use should be protected and that a diligent occupant should be rewarded at the expense of a careless owner.'" *Id*. at 577 (quoting Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land*, § 5:1, 5-5 (2008)). To establish a prescriptive easement, the claimant must show by clear and convincing evidence "'an open and notorious use of [the] defendants' land adverse to the rights of [the] defendants for a continuous and uninterrupted period of ten years.'" *Id*. at 577-78 (quoting *Thompson v. Scott*, 270 Or 542, 546, 528 P2d 509 (1974)). Whether a claimant has made that showing is a question of fact. *Id*. at 578.

In this case, the only element of a prescriptive easement at issue is whether plaintiffs' open and notorious use of the access path was "adverse" to defendant's rights. "A critical underpinning of the [prescriptive easement] doctrine *** is that the owner of land against whom a prescriptive

easement is being claimed must have reason to know of the adverse use of his or her property before being held responsible for failing diligently to take action to protect it." *Id*. at 577. Under our case law, "open and notorious use for the prescribed period gives rise to a rebuttable presumption of adverse use." *Id*. at 579; *see also Albany & Eastern Railroad Company v. Martell*, 366 Or 715, 469 P3d 748 , *adh'd to on recons*, 367 Or 139, 475 P3d 437 (2020). The Supreme Court has explained with regard to that rebuttable presumption:

> "That rule applies in ordinary cases, in which the person claiming the easement by prescription is a stranger to the landowner; under such circumstances, it makes sense to assume that obvious use of the owner's property is adverse to his or her rights. But the rule does not apply in all cases; in particular, when the nature of the land or the relationship between the parties is such that the use of the owner's property is not likely to put the owner on notice of the adverse nature of the use."

*Wels*, 360 Or at 579.

        The presumption of adversity does not apply when the use is in accordance with permission from the landowner, or "when a claimant uses a road that the landowner constructed or that is of unknown origin."[1] *Id.*; *see also Albany & Eastern Railroad Company*, 366 Or at 722-23. In the case of the roadway constructed by a landowner or of unknown origin, "the claimant's use of the road—no matter how obvious—does not give rise to a presumption that it is adverse to the owner." *Wels*, 360 Or at 579; *see also Insko v. Mosier*, 235 Or App 451, 458, 234 P3d 984 (2010) (stating that the presumption of adversity also "may be rebutted by evidence that the plaintiff's use was of an existing way (*i.e.*, a way not constructed by the plaintiff or the plaintiff's predecessor) and did not interfere with the owner's use of the servient land").[2] If an exception to the presumption applies,

---

[1]  Defendant argues that there is also an exception to the presumption of adversity for "uses of unenclosed or unemployed lands," under *Wood*, 276 Or at 56. Because we conclude that the presumption does not apply based on the well-established existing way exception discussed in *Wels*, we do not address that argument.

[2]  We note that recent Supreme Court case law treats use of an existing roadway as an exception to the rebuttable presumption of adversity. *See Albany & Eastern Railroad Company*, 366 Or at 722-23 (stating that it is a "common road" exception to the rebuttable presumption); *Wels*, 360 Or at 580 ("When a claimant

the claimant must affirmatively establish by clear and convincing evidence that the use was adverse. *See Wels*, 360 Or at 580. In such a case, adverse use can be established by clear and convincing evidence that the claimant's use of the road interfered with the owner's use of the road or that the claimant used the road under a claim of right and the owner knew or should have known of the claim. *Id*.

In this case, the undisputed facts from the summary judgment record are that plaintiffs' use was delivery trucks driving over a small portion of defendant's graveled lot to enter the gate to plaintiffs' warehouse and yard. There was no evidence that defendant, or its predecessor, gave plaintiffs, or their predecessors, permission for the use. There was also no evidence that plaintiffs or plaintiffs' predecessors constructed any type of access path on defendant's property; rather, they merely used defendant's already graveled lot as an existing way to reach the gate in the fence. There also was no evidence that use of the access path by plaintiffs or their predecessors interfered with defendant's use of the access path. Lepman testified that he did not mind plaintiffs or anyone else driving over defendant's property, which was vacant, unimproved, and unenclosed.[3] Based on this record, as explained below, plaintiffs were not entitled to the presumption of adversity on their motion for summary judgment.

Plaintiffs were using an existing way on their neighbor's lot—a portion of a graveled lot that was completely open

---

uses a preexisting road, the claimant must affirmatively establish that his or her use of the road is adverse."). However, prior case law typically discussed use of an existing roadway as a means to rebut the rebuttable presumption. *See, e.g.*, *Woods v. Hart*, 254 Or 434, 437, 458 P2d 945 (1969) ("Even if we were to hold that a presumption of adverseness arises in every case where one person uses a way across another person's land for the prescriptive period, the fact that the claimant's use is of an existing way and the use does not interfere with the owner's use is, in our opinion, enough to rebut the presumption of adversensess."). In keeping with recent Supreme Court precedent, we proceed to treat use of an existing roadway as an exception to the rebuttable presumption.

[3] We note that it is a disputed fact in the record whether plaintiffs' use of the access path was exclusive or not—plaintiffs attested it was an exclusive use, but Lepman testified that the public used it. We are unpersuaded that that dispute raises a genuine issue of material fact as to whether plaintiffs are entitled to a rebuttable presumption of adversity. Based on the nature of the land and the nature of the use, even if plaintiffs' use of the access path was exclusive, that fact alone would not change our analysis.

to the public—and that existing way was not modified by plaintiffs in any manner. There is no evidence in the summary judgment record of who graveled the lot, which makes the existing way of unknown origin. And, although plaintiffs and defendant did not know each other personally, they were owners of neighboring lots and not "strangers" as that term is used in the case law. When the claimant and owner are neighbors, it is more reasonable to assume the use of an existing way is being made pursuant to a "friendly arrangement," which is the reasoning behind the exception to the rebuttable presumption of adversity for uses of an existing way. *See, e.g.*, *Wels*, 360 Or at 579 (when a claimant uses an existing way, "'it is more reasonable to assume that the use was pursuant to a friendly arrangement between neighbors than to assume that the user was making an adverse claim'" (quoting *Woods v. Hart*, 254 Or 434, 436, 458 P2d 945 (1960)); *see also Albany & Eastern Railroad Company*, 366 Or at 724 (stating that there was no dispute that "the railroad company and Sharinghousen were 'strangers,' rather than family members or neighbors who permitted each other to cross their land through a 'friendly arrangement'"). Here, that inference is further supported by Lepman's testimony that he was aware the public was using the graveled lot and that he did not mind anyone, including plaintiffs, driving over the graveled lot for access.

As stated in *Wels*, when a claimant uses an existing road constructed by the owner or of unknown origin, "the claimant's use of the road—no matter how obvious—does not give rise to a presumption that it is adverse to the owner." 360 Or at 579. The rebuttable presumption of adversity does not arise, "when the nature of the land or the relationship between the parties is such that the use of the owner's property is not likely to put the owner on notice of the adverse nature of the use." *See id.* The use of driving over 12 feet of an already graveled, unimproved, and neighboring lot that is not blocked off from the street in any manner does not give such notice. In so concluding, we reject plaintiffs' argument that our analysis is affected in some manner by defendant's lack of due diligence to discover sooner that plaintiffs' use of the access path was being used as the access to the

warehouse. On this summary judgment record, plaintiffs were not entitled to a rebuttable presumption of adversity.

Having determined that the trial court erred in applying the presumption of adversity to grant summary judgment to plaintiffs, we turn to the parties' arguments of whether, in the alternative, plaintiffs provided sufficient affirmative evidence of adversity to be granted summary judgment. To show adverse use, plaintiffs are required to produce clear and convincing evidence that their use interfered with defendant's use of the access path or that plaintiffs used the access path under a claim of right and defendant knew or should have known of the claim. *Wels*, 360 Or at 580. Because plaintiffs, the moving party, would have had the burden of proof at trial to prove their entitlement to the prescriptive easement, they "bore the burden of producing evidence to establish that [claim] as a matter of law at the summary judgment stage." *Wieck v. Hostetter*, 274 Or App 457, 470, 362 P3d 254 (2015). "That means that our task on appeal, as circumscribed by our standard of review, is to determine whether the uncontroverted evidence presented by [plaintiffs] in support of [their] motion for summary judgment is such that all reasonable factfinders would have to find in [plaintiffs'] favor[.]" *Id*. Here, we conclude that plaintiffs did not make that showing and thus were not entitled to judgment as a matter of law.

First, plaintiffs presented no evidence in the summary judgment record that the use of the access path was under a claim of right. Although plaintiffs argue on appeal that the use was under a claim of right, there is nothing in the summary judgment record to support that argument. There was no evidence that plaintiffs communicated a claim of right to defendant or that they took observable actions demonstrating a claim of right. Rather, plaintiffs rely on the obvious use for access to the warehouse, but that does not establish that the use was made under a claim of right that defendant should have known of. It is well-established that a "claimants' uncommunicated belief that they have a legal right to defendants' property 'is legally insufficient, in the absence of evidence that plaintiffs communicated that belief to defendant[s].'" *Hisey v. Patrick*, 309 Or App 625, 637, 484

P3d 377, *rev den*, 368 Or 347 (2021) (quoting *Waters v. Klippel Water, Inc.*, 304 Or App 251, 257, 464 P3d 490 (2020)); *see also Wels*, 360 Or at 580 (citing as an example of sufficient evidence of a claim of right a case where the plaintiffs cut a wire that the defendant strung across the road and complained to the defendant about his interference with their right to use the road (citing *Davis v. Gassner*, 272 Or 166, 169, 535 P2d 760 (1975))).

Second, plaintiffs did not present evidence that their use interfered with defendant's use of the access path. Plaintiffs argue that the use was a long-standing, clearly visible use that interfered with defendant's planned development of the property and would have interfered with any prior development plans as well. That, however, is not the legal standard for adversity. A use of an existing way is adverse if that use interferes with the owner's use of the same existing way. *Wels*, 360 Or at 580 ("[T]he focus is on the extent to which the claimant's use interfered with the owner's own *use of the road*, not on the extent to which the claimant's use of the road somehow interfered with the owner's use or enjoyment of the property generally."). And, that adversity must have existed for the 10-year prescriptive period. *Id.* at 577 ("The plaintiff must establish open and notorious use of [the] defendants' land adverse to the rights of [the] defendants for a continuous and uninterrupted period of ten years."). There was no evidence that plaintiffs' use interfered with defendant's use of the access path at any time. Plaintiffs cannot meet the standard through speculation that the use could have interfered with prior, nonexistent development plans or through interference with defendant's development plans that only recently materialized.

The trial court erred in granting plaintiffs' motion for summary judgment.

Reversed and remanded.