**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 48561**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | **Moscow, April 2022 Term** |
| | ) | |
| v. | ) | **Opinion Filed: April 29, 2022** |
| | ) | |
| **PAUL CODY STONECYPHER,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. John T. Mitchell, District Judge.

The decision of the district court is <u>affirmed.</u>

Eric D. Fredericksen, State Appellant Public Defender, Boise, for Appellant. Jason Pintler argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kacey Jones argued.

———————————

BRODY, Justice.

Paul Stonecypher was stopped by law enforcement for vehicle equipment violations while driving through Idaho on a trip from California to Montana. Stonecypher alleges that his seizure was unlawfully prolonged to allow for a sniff of the vehicle by a drug-detection dog. We disagree because the extension of the stop was justified by reasonable suspicion of illegal drug activity. We affirm the district court's denial of Stonecypher's motion to suppress.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2020, Idaho State Police Corporal Seth Green observed Stonecypher driving a lifted pickup truck east on I-90 in Kootenai County without mudflaps as required by Idaho Code section 49-949. The pickup also lacked license plates, and a temporary license in the rear window appeared to have been altered. Green pulled over Stonecypher and spoke with him and his passengers, Tabatha Mosca and Rodney Harrell, during the ensuing stop. Green noticed items in the cab of the truck that he associated with illegal drug activity and observed that each of the

occupants displayed physical indications of recent drug use.

While waiting for the results of the warrant check from dispatch, Green asked the three about their travels. Green found the explanation for their trip to be incongruous and, because their story involved returning from a visit with a person actively sick with COVID-19, he suspected the story was designed to dissuade him from pursuing the stop further.

At about eight minutes into the stop, Green told the occupants that he suspected drug activity and began to ask them if they had any drugs or paraphernalia in the pickup. Green's questions were interrupted when dispatch informed Green that the license and warrant check were clear. Green then resumed his questions and the three denied that there were any illegal drugs in the pickup. Eventually, a K-9 unit arrived and the drug-detection dog alerted to the presence of illegal drugs. A subsequent search of the pickup uncovered more than three and a half pounds of marijuana, more than 200 grams of methamphetamine, drug paraphernalia, firearms, and ammunition.

The State charged Stonecypher with possession of methamphetamine, trafficking in marijuana, and possession of drug paraphernalia. Stonecypher moved to suppress the evidence of drugs and paraphernalia, arguing that Green lacked reasonable suspicion to extend the stop for the dog sniff. The district court held a hearing at which Green testified and the dash camera video of the stop was admitted into evidence. The district court found Green's testimony "inherently credible" in its entirety and held Green had reasonable suspicion of drug activity "incredibly early" in the stop. Accordingly, the district court denied Stonecypher's motion to suppress.

Stonecypher entered a conditional plea of guilty to possession of methamphetamine, preserving his right to appeal the denial of his motion to suppress. The district court sentenced Stonecypher to six years with two years fixed and retained jurisdiction. Stonecypher timely appealed.

## II. STANDARD OF REVIEW

"When this Court reviews a district court's order granting or denying a motion to suppress, the standard of review is bifurcated." *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019) (quoting *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009)). "This Court will accept the trial court's findings of fact unless they are clearly erroneous." *Id*. (citing *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005)). However, "the trial court's

application of constitutional principles in light of the facts found" is reviewed de novo. *Id.*

### III. ANALYSIS

The Fourth Amendment of the United States Constitution guarantees the right to be free from unreasonable searches and seizures. "The stop of a vehicle by law enforcement constitutes a seizure of its occupants to which the Fourth Amendment applies." *State v. Linze*, 161 Idaho 605, 607–08, 389 P.3d 150, 152–53 (2016) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). To justify the detention of a vehicle's occupants, the detention must be supported by an officer's reasonable suspicion that a crime has been committed. *Id.* "The quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish probable cause." *State v. Gonzales*, 165 Idaho 667, 673, 450 P.3d 315, 321 (2019) (quoting *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009)). "Still, reasonable suspicion requires more than a mere hunch or 'inchoate and unparticularized suspicion.' " *Id.*

"Where a detention is justified by a traffic infraction, 'authority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.' " *State v. Randall*, 169 Idaho 358, ___, 496 P.3d 844, 849 (2021) (quoting *State v. Hale*, 168 Idaho 863, 867, 489 P.3d 450, 454 (2021)). Tasks tied to addressing traffic infractions include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Hale*, 168 Idaho at 867, 489 P.3d at 454 (quoting *Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015)). However, "[t]he purpose of a stop is not permanently fixed, . . . for during the course of the detention there may evolve suspicion of criminality different from that which initially prompted the stop." *Randall*, 169 Idaho at ___, 496 P.3d at 849 (quoting *State v. Sheldon*, 139 Idaho 980, 984, 88 P.3d 1220, 1224 (Ct. App. 2003)).

Here, the parties agree that the tasks tied to the initial purpose of the stop were completed when dispatch returned the results of the license and warrant check to Green. Further, Stonecypher does not allege that Green prolonged the stop in violation of *Rodriguez* by pursuing activities unrelated to its traffic purpose before this point. Therefore, the only issue before us is whether the facts and circumstances known to Green at that time established a reasonable suspicion of drug activity. We hold that they did.

The facts supporting reasonable suspicion of drug activity were numerous. While Stonecypher was pulling over to the side of the road, Green noticed furtive "movement all over

3

the car." Upon making contact with the occupants of the pickup, all three displayed signs of recent drug use. Specifically, "Stonecypher had sunken cheekbones, flaccid facial muscles, glassy eyes, droopy eyelids . . . was speaking slowly[,]" and "[h]is shoulders were very slouched"; Mosca "had glassy eyes, flaccid facial muscles, was speaking very quickly. . . . [and] had a lot of head movement, going back and forth, appearing unable to sit still"; and Harrell "had flaccid facial muscles, glassy eyes" and was "visibly sweating on a day that was very cool." Based on these physical indicators, Green testified that he believed all three occupants were likely under the influence of illegal drugs.

Green also observed a torch lighter in the ashtray of the pickup, which was next to a handkerchief with something rolled up inside. According to Green, torch lighters are very commonly associated with illegal drug use. Additionally, a high-end walkie-talkie was clipped to the visor on the passenger side of the cab. Green testified "[t]hat's a thing I see commonly with drug traffickers. If they have a pace car or . . . follow vehicle . . . they'll use it to signal to the other driver" or "to call in a drop site for a drug deal."

Finally, Green found the occupants' explanation of their travel plans to be suspicious. Harrell told Green that his uncle was sick with COVID-19, that he and Mosca had traveled from Montana to California to visit him, and that Stonecypher was a friend of his uncle who offered to drive the two back to Montana. This raised Green's suspicion for two reasons. First, Green testified that since the COVID-19 pandemic began, he had observed a pattern among drug traffickers of "telling me they were just tested for COVID-19 or . . . just saw someone with COVID, essentially to try to create that distance to keep me from pursuing the traffic stop any further." Second, Harrell did not seem to know anything about his uncle's prognosis, and Green thought it "odd to go all the way out there but not find out if he was gonna make it or not" before returning.

Taken together, these facts provided Green with more than a "mere hunch" of ongoing illegal activity among the occupants of the vehicle. Therefore, the continued detention of Stonecypher was supported by reasonable suspicion and his Fourth Amendment rights were not violated by extending the stop to investigate further.

In arguing to the contrary, Stonecypher highlights individual facts and asserts that they should not be given significant weight. Regarding the torch lighter, Stonecypher points out that these may be used to light cigars and are sold in cigar shops. Regarding the physical signs of

recent drug use, Stonecypher notes some of the signs Green observed could be the side effects of legally prescribed drugs. And regarding the walkie-talkie, Stonecypher suggests this could not contribute to reasonable suspicion because Harrell claimed it did not work.

These arguments are not persuasive. To begin, "the existence of alternative innocent explanations does not necessarily negate reasonable suspicion." *State v. Danney*, 153 Idaho 405, 422, 283 P.3d 722, 728 (2012). While Stonecypher posits innocent explanations for the presence of the torch lighter and the signs of recent drug use noted by Green, he does not contend the innocent explanations are more likely than the incriminating ones. And even if innocent explanations for individual facts were more likely, what matters is the totality of the circumstances, not each fact considered in isolation. Thus, the possibility that the torch lighter was used for cigars or that all three occupants were taking legally prescribed medicines does not make Officer Green's suspicion of illegal drug activity unreasonable.

Likewise, Stonecypher's argument regarding the walkie-talkie is misplaced. Harrell told Green that the walkie-talkie did not work and Stonecypher asserts that "the presence of a non-working walkie-talkie does not support a reasonable suspicion that the occupants of the truck were engaged in drug trafficking." However, Green was entitled to presume that the walkie-talkie was functional until he learned otherwise, and he was not required to take Harrell's word on the matter.

In sum, there were numerous facts known to Officer Green suggesting drug activity was afoot. While Stonecypher has sought to diminish the significance of several facts taken alone, his arguments are unpersuasive because they ignore that "whether an officer's suspicion is reasonable depends on the *totality* of the circumstances known to the officer, not the weight of facts considered in isolation." *Randall*, 169 Idaho at 365, 496 P.3d at 851 (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)) (emphasis added). Considering the totality of circumstances, Green's suspicion was reasonable and the stop was not improperly prolonged.

## IV. CONCLUSION

The decision of the district court denying Stonecypher's motion to suppress is affirmed.

CHIEF JUSTICE BEVAN and JUSTICES STEGNER, MOELLER, and ZAHN concur.