# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48839-2021

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, September 2022 Term |
| | ) | |
| v. | ) | Opinion filed: November 9, 2023 |
| | ) | |
| RODNEY CARLTON HARRELL, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. John T. Mitchell, District Judge.

The judgment of conviction is <u>affirmed</u>.

Nevin, Benjamin & McKay LLP, Boise, for Appellant. Dennis A. Benjamin argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Kenneth K. Jorgensen argued.

_____

ZAHN, Justice.

Rodney Carlton Harrell appeals his judgment of conviction for trafficking in methamphetamine, trafficking in marijuana, and possession of drug paraphernalia. Harrell argues his convictions should be vacated because: (1) the district court erred in denying his motion to suppress, and (2) the district court erred in denying his objection to the reduction of peremptory challenges imposed by this Court's emergency order adopted in response to the COVID-19 pandemic. For the reasons stated below, we affirm Harrell's judgment of conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the outset, the incident in this case involved the arrest of three occupants of a pickup truck—Harrell, Stonecypher, and Mosca. This Court resolved Stonecypher's related appeal involving the denial of his motion to suppress in *State v. Stonecypher*, 170 Idaho 156, 508 P.3d

1

1230 (2022). Both cases involve the same incident; therefore, we incorporate here the facts described in our decision in *Stonecypher*:

> In May 2020, Idaho State Police Corporal Seth Green observed Stonecypher driving a lifted pickup truck east on I-90 in Kootenai County without mudflaps as required by Idaho Code section 49-949. The pickup also lacked license plates, and a temporary license in the rear window appeared to have been altered. Green pulled over Stonecypher and spoke with him and his passengers, Tabatha Mosca and Rodney Harrell, during the ensuing stop. Green noticed items in the cab of the truck that he associated with illegal drug activity and observed that each of the occupants displayed physical indications of recent drug use.
>
> While waiting for the results of the warrant check from dispatch, Green asked the three about their travels. Green found the explanation for their trip to be incongruous and, because their story involved returning from a visit with a person actively sick with COVID-19, he suspected the story was designed to dissuade him from pursuing the stop further.
>
> At about eight minutes into the stop, Green told the occupants that he suspected drug activity and began to ask them if they had any drugs or paraphernalia in the pickup. Green's questions were interrupted when dispatch informed Green that the license and warrant check were clear. Green then resumed his questions and the three denied that there were any illegal drugs in the pickup. Eventually, a K-9 unit arrived and the drug-detection dog alerted to the presence of illegal drugs. A subsequent search of the pickup uncovered more than three and a half pounds of marijuana, more than 200 grams of methamphetamine, drug paraphernalia, firearms, and ammunition.

*Id.* at 158, 508 P.3d at 1232.

The State charged Harrell with one count of trafficking in methamphetamine pursuant to Idaho Code section 37-2732B(a)(4)(A), one count of trafficking in marijuana pursuant to Idaho Code section 37-2732B(a)(1)(A), and one count of possession of drug paraphernalia pursuant to Idaho Code section 37-2734A(1). The State also alleged that Harrell was subject to a persistent violator sentencing enhancement because he had previously been convicted of at least two other felony offenses. Harrell moved to suppress all evidence seized during the traffic stop because "the extension of the stop and the warrantless search of the vehicle by law enforcement was [sic] unlawful and without legal justification, therefore [sic] in violation of the Fourth Amendment to the Constitution of the United States and Article I § 17 of the Constitution of the State of Idaho." The State opposed the motion to suppress and argued that Green's observations provided a reasonable suspicion to "expand the purpose of the traffic stop to include a drug investigation" and that the search of the vehicle was lawful because the dog sniff provided probable cause.

The district court denied the motion to suppress. The district court explained that the purpose of the encounter switched from investigation of potential traffic infractions to a drug trafficking investigation early on in the stop. The district court found that the arresting officer's observations of the torch lighter, along with the physical mannerisms of the occupants, sufficiently provided him with reasonable suspicion to change the purpose of the stop and call for a canine unit. Additionally, the district court concluded that the drug dog's alert provided probable cause to search the vehicle. The district court further concluded that there was no unlawful extension of the stop because the arresting officer's observations gave him reasonable suspicion to expand the purpose of the stop.

Harrell's trial was rescheduled several times due to the COVID-19 pandemic. During the pandemic, this Court issued a series of emergency orders governing trial proceedings. The orders set forth several deviations from our rules of criminal procedure, including a reduction in the number of peremptory challenges in certain criminal cases. Harrell filed a pre-trial written objection to the reduced number of peremptory challenges.

At the time the district court decided Harrell's motion, our October 8, 2020 Amended Order governed trial proceedings. It also reduced the number of peremptory challenges:

> b. Peremptory challenges allotted to each side, being procedural mechanisms and not substantive rights, shall be modified as follows:
>
> > i. Pursuant to I.C.R. 24(d), if the offense charged is punishable by death and the state is seeking a death sentence when voir dire commences, each party, regardless of the number of defendants, is entitled to 10 peremptory challenges.
> >
> > ii. Pursuant to I.C.R. 24(d), in all other felonies, each party, regardless of the number of defendants, is entitled to three peremptory challenges; however, if there are co-defendants and the court determines that there is a conflict of interest between them or among them, the court may allow one additional peremptory challenge (total of four), and permit them to be exercised separately (e.g. two each), or jointly.

Am. Order re: Jury Trials ¶ 9(b) (Idaho Oct. 8, 2020). The district court overruled Harrell's objection and, in accordance with this Court's Order, allowed each side to have only three peremptory challenges because Harrell's criminal charges were not punishable by death. The jury convicted Harrell on all charges. Harrell then admitted that he had been convicted of eight prior felony offenses, which was sufficient to invoke the application of the persistent violator sentencing enhancement.

For count one, trafficking in methamphetamine greater than 200 grams, the district court sentenced Harrell to a unified term of life imprisonment, with 10 years fixed. The district court noted that the sentence on count one included the enhancement for being a persistent violator. For count two, trafficking in marijuana one pound or more, the district court sentenced Harrell to a unified term of five years, with all five years fixed. For count three, the crime of possession of drug paraphernalia, the district court sentenced Harrell to 354 days in the local jail. The court ordered that the three sentences be served concurrently. Harrell timely appealed his conviction.

## II.    ISSUES ON APPEAL

1. Whether the district court erred in denying Harrell's motion to suppress.
2. Whether the district court erred in denying Harrell's objection to the reduction of peremptory challenges.

## III.    STANDARDS OF REVIEW

This Court applies a bifurcated standard when reviewing the denial of a motion to suppress. *State v. Danney*, 153 Idaho 405, 408, 283 P.3d 722, 725 (2012). "This Court will accept the trial court's findings of fact unless they are clearly erroneous but will freely review the trial court's application of constitutional principles to the facts found." *Id.* "Findings of fact are not clearly erroneous if they are supported by substantial and competent evidence." *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009) (citing *State v. Henage*, 143 Idaho 655, 659, 152 P.3d 16, 20 (2007)). It is within the discretion of the trial court to determine the credibility of the witnesses, weigh conflicting evidence, and draw factual inferences. *Id.*

We review constitutional questions de novo. *State v. Smalley*, 164 Idaho 780, 783, 435 P.3d 1100, 1103 (2019).

## IV.    ANALYSIS

**A. The district court did not err when it denied Harrell's motion to suppress.**

Harrell's arguments are similar to those raised by Stonecypher in his related appeal. We rejected those arguments in *Stonecypher* and Harrell's arguments provide no reason for us to depart from that analysis here. *See State v. Stonecypher*, 170 Idaho 156, 508 P.3d 1230 (2022). For the reasons stated in our decision in *Stonecypher*, we affirm the district court's decision denying the motion to suppress. *See id.*

**B. The district court did not err when it denied Harrell's objection to the reduction of peremptory challenges.**

Harrell argues the district court erred in overruling his objection to the reduction in the number of peremptory challenges he received because the Idaho Constitution and the United States Constitution both guarantee him ten peremptory challenges. We affirm the district court's decision because neither constitution guarantees a specific number of peremptory challenges.

*1. The Idaho Constitution's right to jury trial does not incorporate a specific number of peremptory challenges.*

Harrell argues that Article I, sections 7 and 13 of the Idaho Constitution, when read together, afford Idaho citizens a right to ten peremptory challenges. In support of this contention, he relies primarily on the fact that territorial statutes in effect at the time the Idaho Constitution was adopted provided ten peremptory challenges for defendants facing life in prison. Harrell also argues that the right to peremptory challenges has roots in the common law, which supports his position that the Idaho Constitution incorporated this right.

The State asserts that this Court had the inherent power to issue its emergency order concerning peremptory challenges because the number of challenges available to a criminal defendant is procedural rather than substantive. The State also points out that the question before this Court is whether the *number* of peremptory challenges a criminal defendant receives is constitutionally protected; the question is not whether there is a constitutional right to *any* peremptory challenges. Finally, the State asserts Harrell failed to adequately support his argument in his opening brief because he did not address the standard for reversable error announced in *State v. Cox*, 169 Idaho 14, 490 P.3d 14 (2021).

The district court's analysis of the issue began by acknowledging this Court's October 8, 2020 Amended Order. The court then stated that "I do think that the [c]ourt needs to make a record as to its ruling and not simply rely on the order issued by the Idaho Supreme Court." The district court concluded that peremptory challenges are a "state-created means to the [c]onstitutional end of an impartial jury and a fair trial[.]" The district court also noted it had not "heard any real demonstration of prejudice" as required by Idaho caselaw. The court further observed that the October 8, 2020 Amended Order stated that the number of peremptory challenges allotted to either side is a procedural issue rather than a substantive right. On these bases, the district court overruled Harrell's objection to the number of peremptory challenges he received under the October 8, 2020 Amended Order.

Harrell's argument requires us to interpret the scope of the Idaho Constitution's jury trial provisions. Harrell asserts that, when read together and in conjunction with Idaho's territorial statutes, sections 7 and 13 of Article I of the Idaho Constitution guarantee a defendant ten peremptory challenges. Both provisions are in the first section of our constitution, entitled the "Declaration of Rights." Article I, section 7 is titled "Right to Trial by Jury" and states:

> The right of trial by jury shall remain inviolate; but in civil actions, three-fourths of the jury may render a verdict, and the legislature may provide that in all cases of misdemeanors five-sixths of the jury may render a verdict. A trial by jury may be waived in all criminal cases, by the consent of all parties, expressed in open court, and in civil actions by the consent of the parties, signified in such manner as may be prescribed by law. In civil actions the jury may consist of twelve or of any number less than twelve upon which the parties may agree in open court. Provided, that in cases of misdemeanor and in civil actions within the jurisdiction of any court inferior to the district court, whether such case or action be tried in such inferior court or in district court, the jury shall consist of not more than six.

Article I, section 13 is titled "Guaranties in Criminal Actions and Due Process of Law" and states:

> In all criminal prosecutions, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf, and to appear and defend in person and with counsel.

> No person shall be twice put in jeopardy for the same offense; nor be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law.

Neither provision expressly mentions peremptory challenges. We therefore must determine what the founders intended to encompass within the statement "[t]he right of trial by jury shall remain inviolate[.]"

This Court has interpreted the language, "shall remain inviolate" in Article I, section 7 as preserving the right to a jury trial as it existed when the Idaho Constitution was adopted. *State v. Straub*, 153 Idaho 882, 886, 292 P.3d 273, 277 (2013) ("The constitutional right of trial by jury has been interpreted by this Court to secure that right as it existed at common law when the Idaho Constitution was adopted."). The resolution of Harrell's argument on appeal requires us to determine whether the right to jury trial as it existed at the time the Idaho Constitution was adopted guaranteed a criminal defendant a specific number of peremptory challenges. We utilize several resources when interpreting whether the Idaho Constitution protects certain rights:

> Typically, one of the best resources for interpreting the Idaho Constitution is the compilation of the Proceedings and Debates of the Constitutional Convention of Idaho 1889 (I.W. Hart ed., 1912). [*State v. Clarke*, 165 Idaho 393, 397, 446 P.3d 451, 455 (2019)]. Article 1, Section 17, however, was adopted without debate. *Id.*

6

Thus, "[i]n the absence of the words of the framers, rights guaranteed by the state constitution are 'examined in light of the practices at common law and the statutes of Idaho when our constitution was adopted and approved by the citizens of Idaho.'" *Id.* (quoting *State v. Creech*, 105 Idaho 362, 392, 670 P.2d 463, 493 (1983)). However, as we noted in *State v. Clarke*, while "preexisting statutes and the common law may be used to help inform our interpretation of the Idaho Constitution, . . . they are not the embodiment of, nor are they incorporated within, the Constitution. To hold otherwise would elevate statutes and the common law that predate the Constitution's adoption to constitutional status." *Id.* Therefore, "[w]hen construing the Idaho Constitution, 'the primary object is to determine the intent of the framers.'" *Id.* (citation omitted).

*State v. Lancaster*, 171 Idaho 236, 242, 519 P.3d 1176, 1182 (2022) (all but first alteration in original).

The Proceedings and Debates of the Constitutional Convention of Idaho do not address whether the number of peremptory challenges was intended to be a constitutionally protected aspect of the right to a trial by jury or the guaranties in criminal cases. Rather, the debate concerning the right to trial by jury focused on whether juries should be required to render a unanimous decision. *E.g.*, 1 *Proceedings and Debates of the Constitutional Convention of Idaho 1889*, at 146–61, 235–60 (I. W. Hart ed., 1912).

Turning to the common law practices at the time our constitution was adopted, the earliest known process for challenging jurors can be found in Roman Law. Hans Zeisel & Sheri Seidman Diamond, *The Effect of Peremptory Challenges on Jury and Verdict: An Experiment in a Federal District Court*, 30 Stan. L. Rev. 491, 491 n.1 (1977). In 104 B.C., the *Lex Sevilia* permitted both the accused and the accuser in a criminal case to call 100 "judices," and each could reject 50 from the others' list, leaving 100 to try the case. *Id.* In 7 B.C., the Roman emperor Augustus Caesar issued an edict concerning capital cases, which directed that fifty prospective jurors be drawn, one-half Roman and one-half Greek, and permitted the prosecutor to dismiss one from each group and the accused to dismiss three, provided the accused did not dismiss only Romans or Greeks. *Id.*

The first use of peremptory challenges in England was by prosecutors between the years 1250 and 1300. Amy Wilson, *The End of Peremptory Challenges: A Call for Change Through Comparative Analysis*, 32 Hastings Int'l & Compar. L. Rev. 363, 364 (2009). At that time, prosecutors could remove as many jurors as they wanted. *Id.* Defense counsel were later permitted to exercise peremptory challenges as well. *Id.* The defense, however, was limited to thirty-five peremptory challenges while the prosecution was permitted an unlimited number. *Id.* By Blackstone's time, defendants were still provided thirty-five peremptory challenges. 4 William

Blackstone, *Commentaries on the Laws of England* 353, 354 (1769). King Henry VIII later reduced this number to twenty, which remained until the mid-nineteenth century. Zeise & Diamond, 30 Stan. L. Rev., at 491 n.1.

The American colonies largely adopted the common law provisions concerning jury trials, including the use of peremptory challenges. April J. Anderson, *Peremptory Challenges at the Turn of the Nineteenth Century: Development of Modern Jury Selection Strategies as Seen in Practitioners' Trial Manuals*, 16 Stan. J. Civ. Rts. & Civ. Liberties 1, 17 (2020). However, neither the federal Constitution nor the Bill of Rights mention them, despite argument from some delegates that they should be included. *Id.* at 17–18.

In 1790, the new United States Congress included peremptory challenges in its first criminal law—the Crimes Act of 1790. 1 Cong. Ch. 9, § 30, 1 Stat. 112, 118. The Act granted twenty peremptory challenges to criminal defendants charged with certain capital felonies, and thirty-five peremptory challenges to defendants charged with treason. *Id.* Following the adoption of the Crimes Act, judicial decisions expanded the right to peremptory challenges and, by 1870, almost all states granted both the defense and the prosecution discretion to use a specific number of peremptory challenges. Wilson, 32 Hastings Int'l & Compar. L. Rev., at 366.

During the nineteenth century, most states gave the prosecution fewer peremptory challenges than those allotted to the criminal defendant. Anderson, 16 Stan. J. Civ. Rts. & Civ. Liberties, at 18–19. For example, John Proffatt wrote in his 1877 treatise that the prosecutor typically had half of the number of peremptory challenges than the defendant enjoyed. *Id.* at 19. In 1853, Virginia did not grant the prosecutor any peremptory challenges. *Id.* During the second half of the nineteenth century, states began codifying peremptory challenges in statute and extended them to misdemeanor trials and civil trials. *Id.* By 1889, ten states allowed two peremptory challenges in civil trials, eleven states allowed three challenges, nine permitted four challenges, and one allowed five challenges. *Id.*

The Idaho Territory similarly codified peremptory challenges during the latter half of the nineteenth century. In 1864, Idaho's territorial statutes provided twenty peremptory challenges to defendants facing death or life imprisonment. Rev. Stat. § 334 (Idaho Terr. 1864). In 1887, just three years prior to the adoption of Idaho's Constitution, the territorial legislature reduced the number of peremptory challenges for defendants facing death or life in prison to ten and permitted the Territory five challenges. Rev. Stat. § 7830 (Idaho Terr. 1887). On a trial for any other offense,

the defendant was entitled to six challenges and the Territory was permitted three. *Id.* In the event that several defendants were tried together, Idaho's territorial statutes did not grant each defendant ten peremptory challenges, but instead required them to join together in making the ten challenges. Rev. Stat. § 7816 (Idaho Terr. 1887).

After considering this history, we hold that, while the common law demonstrates widespread use of peremptory challenges, the practices involving the use of challenges differed from jurisdiction to jurisdiction. There is no evidence that the common law uniformly guaranteed criminal defendants a specific number of challenges. The history recited above reveals that, while the states largely codified a right to peremptory challenges, they differed in the number of challenges granted. The common law therefore did not require a specific number of peremptory challenges to ensure that a defendant received an impartial jury.

Our conclusion is also supported by Idaho's history as reflected in its territorial statutes. Just three years before Idaho's citizens ratified the state constitution, Idaho's territorial legislature reduced the number of peremptory challenges provided to a criminal defendant by more than half. It also required criminal defendants to share those peremptory challenges. This meant that the number of peremptory challenges granted to a defendant differed depending on whether the defendant was tried alone or with co-defendants. If the common law at that time guaranteed a criminal defendant a specific number of peremptory challenges, one would not expect to see the territorial legislature changing the number of peremptory challenges or requiring co-defendants to share them. For all of the reasons discussed above, we reject Harrell's appeal and hold that the Idaho Constitution does not guarantee a criminal defendant a specific number of peremptory challenges.

We also note that Harrell has not asserted on appeal that a single biased juror was empaneled, nor has he argued on appeal that a juror should have been removed for cause. Harrell has not shown that the reduction from ten to three peremptory challenges diminished or adversely impacted his right to an impartial jury.

2. *The United States Constitution does not provide a criminal defendant the right to any peremptory challenges.*

Harrell also argues that he has a right to ten peremptory challenges under the United States Constitution's Due Process Clause. He asserts that Idaho Code section 19-2601, which provides criminal defendants with ten peremptory challenges when facing death or life in prison, created a constitutionally protected right that could not be altered without due process. Harrell concedes this

argument was raised for the first time on appeal. Still, he maintains the Court should consider this issue under the fundamental error doctrine.

The State argues Harrell has failed to demonstrate fundamental error. First, the State maintains Harrell has not proved his constitutional rights were violated because there is clear federal caselaw holding that the federal constitution does not provide a right to peremptory challenges. Second, the State argues Harrell has failed to prove this error was clear or obvious based on the record. Finally, the State asserts that Harrell has not shown the alleged deprivation affected his substantial rights.

If a defendant failed to object to an alleged constitutional violation at trial and is raising the issue for the first time on appeal, this Court can only consider it if the alleged violation amounts to fundamental error. *State v. Alvarado*, 168 Idaho 189, 195–96, 481 P.3d 737, 743–44 (2021) (citing *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019)). Under the fundamental error doctrine,

> (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010) (footnote omitted).

Relevant to the first prong of the fundamental error doctrine, the Fourteenth Amendment to the United States Constitution guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" The United States Supreme Court has recognized that certain property and liberty interests are entitled to due process protection. *E.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985). These interests are "not created by the Constitution. Rather, they are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (internal quotation marks and citation omitted).

The United States Supreme Court has "long recognized" that "peremptory challenges are not of federal constitutional dimension." *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000) (citations omitted). Indeed, "[s]tates may withhold peremptory challenges 'altogether without impairing the constitutional guarantee of an impartial jury and a fair trial.'" *Rivera v.*

*Illinois*, 556 U.S. 148, 152 (2009) (quoting *Georgia v. McCollum*, 505 U.S. 42, 57 (1992)). This Court recently recognized this principle: "the existence and scope of a peremptory challenge right is a matter of state law." *Cox*, 169 Idaho at 18, 490 P.3d at 18.

Under his due process theory, Harrell attempts to distinguish United States Supreme Court precedent by arguing that Idaho Code section 19-2601, which provides criminal defendants with ten peremptory challenges when facing death or life in prison, created a constitutionally protected right to ten peremptory challenges that could not be altered without due process. What Harrell fails to appreciate is that the United States Supreme Court has held that "[t]he right to exercise peremptory challenges in state court *is determined by state law*." *Rivera*, 556 U.S. at 152 (emphasis added). Thus, the "Court repeatedly has stated that the right to a peremptory challenge *may be withheld altogether* without impairing the constitutional guarantee of an impartial jury and a fair trial." *McCollum*, 505 U.S. at 57 (emphasis added).

Harrell also fails to grapple with the fact that the United States Supreme Court has rejected due process challenges to the loss of peremptory challenges under state law. *See Ross v. Oklahoma*, 487 U.S. 81, 89 (1988); *Rivera*, 556 U.S. at 156–62. In so doing, the United States Supreme Court emphasized that "the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Ross*, 487 U.S. at 89. While Harrell correctly notes that Idaho Code section 19-2601 identifies a specific number of peremptory challenges, he does not address or otherwise dispute this Court's conclusion in our October 8, 2020 Amended Order that peremptory challenges are procedural mechanisms rather than substantive rights. We have long recognized that when a matter is one of procedure, this Court's rule will prevail over a conflicting statute. *State v. Beam*, 121 Idaho 862, 863, 828 P.2d 891, 892 (1992). While our October 8, 2020 Amended Order was not a rule, it was enacted pursuant to this Court's inherent authority to regulate the procedure in Idaho's trial courts. *Id.* Because Harrell has not challenged our conclusion that peremptory challenges are procedural mechanisms or this Court's inherent authority to regulate all matters of procedure in Idaho's trial courts, our October 8, 2020 Amended Order is the operative document for determining "that which state law provide[d]" Harrell.

At the time of Harrell's jury trial, this Court's October 8, 2020 Amended Order provided Harrell with three peremptory challenges. He does not dispute that he did, in fact, receive three peremptory challenges at his jury trial. As such, Harrell received what he was entitled to under state law. We hold that Harrell has failed to demonstrate a violation of his federal due process

rights and has therefore failed to establish the first prong of the fundamental error doctrine. Given this conclusion, we need not address the remaining elements of the fundamental error doctrine in order to affirm the district court's ruling.

## V. CONCLUSION

For the reasons discussed herein, we affirm Harrell's judgment of conviction.

Chief Justice BEVAN, and Justices BRODY, STEGNER, and MOELLER CONCUR.